[Civ. No. 48600. Second Dist., Div. Three. Oct. 26, 1976.]

In re the Marriage of LOIS A. and HAROLD F. COFFIN.
HAROLD F. COFFIN, Appellant, v.
LOIS A. COFFIN, Respondent.

COUNSEL

Sepulveda & Metzinger and Victor Sepulveda for Appellant.

Calabro, Calabro, Calabro & Calabro and A. J. Calabro for Respondent.

OPINION

**POTTER, J.**—Petitioner Harold F. Coffin appeals from an order vacating and setting aside that portion of an interlocutory judgment of dissolution of marriage (rendered after an uncontested hearing upon the default of respondent Lois A. Coffin) "which relates to the award or distribution of community property . . ."

The petition for dissolution was filed by petitioner on September 4, 1974.[1] An appropriate form was checked indicating that "[a]ll property otherwise subject to disposition by the court in this proceeding has been disposed of by written agreement of the parties." No response was filed in behalf of respondent who was served with a summons and a copy of the petition, and respondent's default was entered on October 23, 1974. The request to enter default recited that "[a] completed FINANCIAL

---

[1] The entire superior court file has been transmitted to this court and made a part of the record of this appeal pursuant to rule 12(a), California Rules of Court, and pursuant to respondent's motion to augment the record.

DECLARATION in the form prescribed by Rule 1285.50 is attached" and the declaration of mailing declared that such request "including any attachments" had been served by first class mail upon petitioner. So far as it is pertinent to this appeal, petitioner's financial declaration included the following:

"(f) All property of the parties known to me includes the following:

| | | | |
|---|---|---|---|
| Cash on hand | $ 25.00 | Retirement or pension fund | $ uknown |
| Money in checking accounts | 100.00 | Life insurance cash value | |
| Money in savings accounts | | Value of any stocks & bonds | |
| Money in credit union accounts | | Value of real estate | 41,000.00 |
| Money in any other accounts or | | Value of all other property | $41,125.00 |
| deposits | | Total property | |

Petitioner's declaration did not disclose the existence of any obligation secured by the real estate other than by setting forth "[r]ent or mortgage payments (residence)" of $260 per month.

At the uncontested trial of the dissolution on November 14, 1974, the court received in evidence a marital settlement agreement executed September 30, 1974, between petitioner and respondent. It was also signed by petitioner's attorney. The agreement as prepared had a blank for the signature of "Attorney for Wife" but no such signature appeared thereon. Said agreement recited in paragraph II, subparagraph 4: "Our purpose is to make an integrated agreement to effect a final and complete settlement of our respective rights in our relation to each other, our respective property rights, our obligations, to provide for the future custody of our minor children, DANA S. COFFIN, GENE H. COFFIN and DON J. COFFIN."

The agreement contained the following provisions relating to the respective rights of the parties to property:

"V

"It is agreed that HUSBAND shall have. as his sole and separate property the real property and improvements thereon located at 10200 Wheatland Avenue, Sunland, California, and WIFE agrees to execute any and all necessary papers, documents, deeds and instruments to convey title to HUSBAND of said real property. However, by this agreement HUSBAND covenants that on the sale of the family residence he will place one-half of the net proceeds of the sale in trust for said children at the estimated value at the date of this agreement with HUSBAND acting as

trustee. Each child of the parties born from this marriage shall receive their pro rata share of said trust upon reaching their twenty-first birthday. Said trust will terminate in any event on June 14, 1981, after the twenty-first birthday has been attained by DON J. COFFIN and his receipt of his pro rata share of said trust. At that time any and all remaining funds in the trust account shall be divided equally among the four children of this marriage.

"It is further agreed that HUSBAND shall have as his sole and separate property any and all furniture, furnishings and personal effects presently in his possession. Further, HUSBAND shall have as his sole and separate property the 1964 Chevrolet Pick-up Truck/Camper, California License No. N 87348 and WIFE agrees to execute any and all necessary papers, documents and other instruments to transfer title of said vehicle to HUSBAND.

"VI

"It is agreed that WIFE shall have as her sole and separate property any and all furniture and furnishings presently in her possession. It is agreed that WIFE shall have the 1969 Ford Mustang automobile, California License No.____and HUSBAND shall execute any and all necessary documents and other instruments to transfer title of said vehicle to WIFE.

"VII

"HUSBAND agrees that he will pay any and all obligations which are due and outstanding and owing by the community and further that he will hold WIFE harmless from any and all obligations which have been incurred by HUSBAND or WIFE prior to the time of the execution of this document. Further, HUSBAND agrees that if any claim, action or proceeding shall hereafter be brought seeking to hold her liable for any of their debts, liabilities, acts or omissions, he shall, at his sole expense, defend WIFE against any such claim or demand (whether or not well-founded) and that he shall hold her free and harmless therefrom."

Petitioner was granted an interlocutory judgment of dissolution which included the following provisions disposing of property:

"2. Petitioner [Harold F. Coffin] shall have as his sole and separate property the real property and improvements located at 10200 Wheatland Avenue, Sunland, CA and Respondent [Lois A. Coffin] agrees to execute any and all necessary papers, documents, deeds and instruments to convey title to Petitioner of said real property. Petitioner shall on the sale of the family residence place one-half of the net proceeds in trust for said children at the estimated value at the date of this agreement with Petitioner acting as Trustee.

"3. Petitioner shall have as his sole and separate property any and all furniture, furnishings and personal effects presently in his possession. Petitioner shall have as his sole and separate property the 1964 Chevrolet Pick-up Truck/Camper, California License No. N 87348 and Respondent agrees to execute any and all necessary papers, documents and other instruments to transfer title of said vehicle to Petitioner.

"4. Respondent shall have as her sole and separate property any and all furniture and furnishings presently in her possession. Respondent shall have the 1969 Ford Mustang automobile, California License No. unknown and Petitioner shall execute any and all necessary documents and other instruments to transfer title of said vehicle to Respondent."

The interlocutory judgment was entered on November 18, 1974, and a final judgment of dissolution was filed and entered on May 23, 1975, based thereon.

On August 1, 1975, respondent filed a notice of motion to set aside her default and the interlocutory judgment and to file a response to the petition. The motion attacked only that portion of the interlocutory judgment of dissolution which related to the award or distribution of community property. The motion was addressed to the court, "acting as a Court of equity" to "allow the Respondent to have her day in court." It was supported by the declaration of respondent which set forth the basis of her claim that it "is grossly unfair that the Respondent should at the termination of a marriage exceeding 21 years and 9 months walk away from that relationship with only a 1969 Mustang automobile and to lose all rights or benefits that she has to the equity in the real property which at the time of the separation Respondent estimates to be approximately $10,000.00 and to also lose all of the accrued rights that she had in and to the pension or profit sharing benefits that have accrued to the account of the petitioner during the 16 years that he was a member of the

Teamsters' Union." Respondent's declaration stated: "That Petitioner didn't even mention to the Respondent that there was any such asset in existence and that such benefits could be extremely valuable" (referring to the pension benefits). Respondent's declarations also set forth the facts concerning the community interest in the family residence which was acquired at a cost of $41,000. She stated in this connection that an $8,000 down payment came from the sale of a former family residence and was community property, that payments of $250 to $275 per month had been made monthly from March 1973, and that all of said payments up to the date of separation were community property.

With respect to the property settlement agreement, respondent declared that she had no legal advice concerning it; that it had been prepared by petitioner's attorney, forwarded to him, and presented to respondent for signature; that whenever it was discussed, "the parties would get into an argument and out of desperation and just to end the arguments the Respondent finally signed the agreement."

Respondent's declaration further alleged that she had sought legal advice for the first time on March 26, 1975, but deferred taking action with respect to her rights until May in view of the impending marriage of the oldest child of the parties; that negotiations for a modification of the decree were initiated in May 1975 until they terminated by petitioner's counsel formally refusing on May 22, 1975, to enter into any modification.

In opposition to respondent's motion, petitioner filed his declaration. In petitioner's declaration he declared that at the time of the separation, and prior to the signing of the property settlement agreement, "respondent had knowledge" of the property described in her declaration, including the "retirement and pension fund available to me as a member of the Teamsters Union." The declaration referred in this connection to paragraph (f) of the financial declaration quoted above. It also stated that upon inquiry subsequent to the filing of his financial declaration, petitioner ascertained that as of June 30, 1974, he had vested retirement benefits which entitled him to at least "a cash termination benefit of approximately $1,435.00."

Petitioner's declaration further alleged that "it was respondent's idea to set up a trust fund for our children, the corpus of which would be the family residence *one-half of the net proceeds of the sale* of the family

residence as of the date of the separation . . ." Petitioner also denied suggesting that respondent not seek legal advice or that he prevented her from doing so. He further stated that he did not force or coerce respondent into signing the settlement agreement, that after she initially refused to sign it, it was placed on a desk in his home where he found it to have been signed after a visit by respondent.

At the hearing of the motion, the court ascertained from counsel who had signed the property settlement agreement as attorney for petitioner that he had not advised respondent to get independent legal advice, it appearing that he "never talked to the lady at any time." When petitioner's counsel stated his view that it was respondent's choice whether she got legal advice, the court commented as follows:

"No, Counsel, I don't agree. I am going to grant the motion. I am going to set aside the final, the interlocutory. You people get together. There are rights involved here, substantial rights. It offends my sense of justice in equity, period."

The court further stated: ". . . I don't think the woman has been adequately protected. And I am going to grant the motion and you people get together and give her an opportunity to know what the situation is."

At petitioner's request, formal findings of fact and conclusions of law were prepared and signed by the court. In the findings, the court found in accordance with respondent's declaration that the $8,000 down payment and all payments on the encumbrance upon the family residence to the date of separation were community funds, and that petitioner's retirement pension benefits with the teamsters' union which had accumulated for a period of approximately 16 years were community property. The court further found in this respect that "the Marital Settlement Agreement executed by the parties herein was executed by the Respondent without knowledge concerning the assets of the community and without knowledge that pension or profit sharing benefits had accrued to the Petitioner . . ." Further, with respect to the marital settlement agreement, the court found "[t]hat said agreement was signed by the Respondent in part by reason of the coercion of the Petitioner and in an effort to avoid arguments and accusations by the Petitioner." The court concluded "[t]hat the default of the Respondent was entered by reason of the Respondent's ignorance and mistake and without an

opportunity for a fair adversary hearing." The court concluded that the execution of the marital settlement agreement did not "in fact constitute a meeting of the minds of the parties," that the consent of respondent in the signing of the marital settlement agreement "was induced by coercive conduct of the Petitioner," that respondent's default was entered "by reason of [her] ignorance and mistake and without an opportunity for a fair adversary hearing," and that the portion of the interlocutory judgment of dissolution which related to the award of distribution of community property should be vacated and set aside, and respondent's response be deemed filed.

*Contentions*

Appellant contends:

1. Relief under Code of Civil Procedure section 473 was not available inasmuch as the interlocutory judgment of dissolution was entered more than six months before the date respondent's motion was made.

2. That no showing was made by respondent justifying relief in equity for extrinsic fraud or mistake.

3. That equitable relief was precluded by respondent's laches.

Respondent does not deny the inapplicability of Code of Civil Procedure section 473, but contends that an adequate showing of extrinsic fraud or mistake was made justifying relief in equity.

*Discussion*

As this court said in *Outdoor Imports, Inc.* v. *Stanoff,* 7 Cal.App.3d 518, 522 [86 Cal.Rptr. 593]: "It is well settled that appellate courts have always been and are favorably disposed toward orders excusing defaults and permitting controversies to be adjudicated upon their merits. Such orders are rarely reversed and never unless it clearly appears that there has been a plain abuse of discretion. (*Lynch* v. *Spilman,* 67 Cal.2d 251, 257-258 [62 Cal.Rptr. 12, 431 P.2d 636]; *Weitz* v. *Yankosky,* 63 Cal.2d 849, 854-855 [48 Cal.Rptr. 620, 409 P.2d 700]; *Benjamin* v. *Dalmo Mfg. Co.,* 31 Cal.2d 523, 525 [190 P.2d 593].)"

Where the six-month period during which motions under Code of Civil Procedure section 473 can be made has passed, relief may still be

granted under the court's equity powers. Although the grounds upon which such relief may be granted are somewhat narrower, the procedure is essentially the same. In *Munoz* v. *Lopez,* 275 Cal.App.2d 178 [79 Cal.Rptr. 563], the court described the motion based upon equitable grounds as follows (275 Cal.App.2d at p. 181):

"A trial court has an inherent equity power under which, apart from statutory authority, it may grant relief from a default judgment obtained through extrinsic fraud or mistake. (*Weitz* v. *Yankosky,* 63 Cal.2d 849 [48 Cal.Rptr. 620, 409 P.2d 700]; *Olivera* v. *Grace,* 19 Cal.2d 570 [122 P.2d 564, 140 A.L.R. 1328]; *Sanchez* v. *Sanchez,* 273 Cal.App.2d 159 [77 Cal.Rptr. 884].) That equitable power may be invoked by the party seeking to set aside the default judgment either by the filing of a separate suit for the purpose or by a motion made in the action in which the default was taken. (*Olivera* v. *Grace, supra*; *Dei Tos* v. *Dei Tos,* 105 Cal.App.2d 81 [232 P.2d 873]; *Costa* v. *Traina,* 200 Cal.App.2d 655 [19 Cal.Rptr. 521]; *McCreadie* v. *Arques,* 248 Cal.App.2d 39 [56 Cal.Rptr. 188].) The time limit for the filing of such a motion or separate suit is a reasonable time from discovery of the default judgment irrespective of when it may actually have been entered. (*Weitz* v. *Yankosky, supra*; *Bennett* v. *Hibernia Bank,* 47 Cal.2d 540 [305 P.2d 20]; *Hayes* v. *Risk,* 255 Cal.App.2d 613 [64 Cal.Rptr. 36]; *Fidelity Bank* v. *Kettler,* 264 Cal.App.2d 481 [70 Cal.Rptr. 500].)

"While the grounds for an equitable action to set aside a default judgment are commonly stated as being those of extrinsic fraud or mistake, the terms are given a very broad meaning which tends to encompass all circumstances that deprive an adversary of fair notice of hearing whether or not those circumstances would qualify as fraudulent or mistaken in the strict sense."

██ The trial court's resolution of disputed fact issues on the basis of the affidavits of the parties has the same standing on appeal as findings based upon oral testimony. In *Smith* v. *Smith,* 4 Cal.App.3d 446, 451-452 [84 Cal.Rptr. 241], the function of the appellate court under these circumstances is set forth as follows: "In considering an appeal from an order which is based on affidavits and which involves the determination of a question of fact, an appellate court is bound by the same rule that controls where oral testimony is presented for review, namely: If there is any conflict in the affidavits those favoring the prevailing party are accepted as true; and since all intendments are in favor of the action

taken .by the lower court the affidavits in behalf of the successful party are deemed not only to establish the facts directly stated therein but all facts reasonably to be inferred from those stated. (*DeWit* v. *Glazier,* 149 Cal.App.2d 75, 81-82 [307 P.2d 1031].)"

■ Applying the above stated standard, respondent's declaration supported the court's finding that she was "without knowledge that pension or profit sharing benefits had accrued to the Petitioner." She stated that "Petitioner didn't even mention to the Respondent that there was any such asset in existence and that such benefits could be extremely valuable." The marital settlement agreement made no mention whatever of any such asset. Inasmuch as it was intended to be "a final and complete settlement of our respective rights in relation to each other," it is reasonable to assume that mention would have been made of the pension rights had their existence been disclosed. Petitioner's declaration includes the statement that "respondent had knowledge" of "a retirement and pension fund available to me as a member of the Teamsters Union." No mention, however, is made of the manner in which respondent obtained such knowledge except a reference to the financial declaration filed as a part of the dissolution proceeding. Though the file discloses that petitioner's financial declaration was served by mail upon respondent, such financial declaration did not disclose the existence of any pension rights. By filling in the blank where the value of such rights was supposed to be stated with the entry "unknown," and stating "total property" of $41,125, which was the sum of the valued items listed, petitioner represented either that he did not know that he had pension rights or that they had no value. In any event, such financial declaration did not impart to respondent knowledge that there were valuable pension rights.

The nondisclosure of community property has long been recognized as a basis for setting aside both property settlement agreements and property dispositions based thereon. *Jorgensen* v. *Jorgensen,* 32 Cal.2d 13 [193 P.2d 728], set forth the basis for such relief, saying in this respect (32 Cal.2d at p. 21): "As the manager of the community property the husband occupies a position of trust (Civ. Code, §§ 172-173, 158), which is not terminated as to assets remaining in his hands when the spouses separate. It is part of his fiduciary duties to account to the wife for the community property when the spouses are negotiating a property settlement agreement. The concealment of community property assets by the husband from the wife in connection with such an agreement is

therefore a breach of a fiduciary duty of the husband that deprives the wife of an opportunity to protect her rights in the concealed assets and thus warrants equitable relief from a judgment approving such agreement. When community property is entrusted to the wife, she likewise occupies a position of trust. It has therefore been held that a husband may obtain equitable relief from a divorce decree incorporating a property settlement agreement obtained by the fraud of the wife in concealing community assets entrusted to her control. (*Boullester* v. *Superior Court,* 137 Cal.App. 193, 195 [30 P.2d 59].) It is immaterial whether the husband or the wife has submitted the property settlement to the court for approval; the fraud of one spouse in concealing the assets, if not discovered by the other, precludes the latter from protecting his or her rights as to the concealed assets in the divorce proceeding." In that case, the court concluded that there was no extrinsic fraud where the husband had disclosed the existence of the community property but had claimed it was his separate property.

In *Orlando* v. *Orlando,* 243 Cal.App.2d 248 [52 Cal.Rptr. 142], the court applied the rule stated in *Jorgensen* to invalidate an interlocutory decree. The court said (243 Cal.App.2d at p. 253): "We therefore hold that where a husband conceals from his wife the existence of community assets whether in the course of negotiations for a property settlement agreement or in the course of litigating their claims to community property, such conduct is violative of his fiduciary duty to account to her for the community property, deprives her of an opportunity to fully present her case, constitutes extrinsic fraud and warrants equitable relief from a judgment. (*Lopez* v. *Lopez* (1965) 63 Cal.2d 735, 738 [48 Cal.Rptr. 136, 408 P.2d 744]; *Flores* v. *Arroyo, supra,* 56 Cal.2d 492, 494-495; *Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d 13, 21-22; *Willson* v. *Burner, supra,* 230 Cal.App.2d 947, 950; *Hopper* v. *Hopper, supra,* 224 Cal.App.2d 446, 448; *Protopappas* v. *Protopappas, supra,* 213 Cal.App.2d 659, 663; *Clark* v. *Clark, supra,* 195 Cal.App.2d 373, 376-382; *Gedstad* v. *Ellichman, supra,* 124 Cal.App.2d 831, 832-834; *Dandini* v. *Dandini, supra,* 120 Cal.App.2d 211, 216; 3 Freeman on Judgments (5th ed.), § 1235, p. 2576; 29 Cal.Jur.2d, Judgments, § 160, p. 111; 30A Am.Jur., Judgments, § 805, p. 738; 49 C.J.S., Judgments, § 372, p. 744.) [Fn. omitted.]"

In *Vai* v. *Bank of America,* 56 Cal.2d 329 [15 Cal.Rptr. 71, 364 P.2d 247], our Supreme Court extended the fiduciary duty of the spouse to the disclosure of community assets and declared the failure to do so constituted constructive fraud. In so doing, the court said (56 Cal.2d at

p. 342): "The failure of the husband in the instant case to disclose fully and fairly material facts relating to the value of community assets from which John gained an advantage constitutes a concealment of material facts and a breach of this fiduciary duty. This is constructive fraud, whether or not such failure to disclose was accompanied by an actual intent to defraud. (Civ. Code, §§ 2235, 1573, subds. 1 and 2.)"

Most recently, in *Boeseke* v. *Boeseke,* 10 Cal.3d 844, 849-850 [112 Cal.Rptr. 401, 519 P.2d 161], our Supreme Court stated the rule as follows:

"By reason of his management and control, one spouse normally has a fiduciary duty to account to the other while negotiating a property settlement agreement. The duty is terminated neither by commencement of an action for dissolution nor by retention of an attorney. (*Vai* v. *Bank of America* (1961) 56 Cal.2d 329, 337 [15 Cal.Rptr. 71, 364 P.2d 247].) *It includes disclosure of the existence of community assets* and material facts affecting their value. (56 Cal.2d at pp. 342-343.)

"We cannot agree with the trial court that the nondisclosure here by the husband constituted either a breach of his fiduciary duty or fraud.

"The managing spouse must be permitted to protect his own interests and to assume a position adverse to the other, particularly when the latter is represented by counsel. For example, in *Jorgensen* v. *Jorgensen* (1948) 32 Cal.2d 13 [193 P.2d 728], we held it was not necessarily fraudulent for a husband to assert community property to be his separate property. We stated that, when the husband takes the position certain property is separate, the wife must then investigate the facts. If she and her counsel choose to accept his assertion, she may not collaterally attack the subsequent judgment approving the settlement. (32 Cal.2d at p. 22; see *In re Marriage of Carter* (1971) 19 Cal.App.3d 479, 489-492 [97 Cal.Rptr. 274].)

"Further, when a spouse, represented by independent counsel, determines to forego a suggested investigation and to accept a proposed settlement, that spouse may not later avoid the agreement unless there has been a misrepresentation or concealment of material facts. Under such circumstances, the spouse proposing the agreement is under no duty to compel the other to investigate, and the accepting spouse's decision, though ill advised, is binding.

"Finally, during negotiation to settle marital property rights, fairness dictates the managing spouse be under no duty to *evaluate* the marital assets. And if the managing spouse does assert an opinion of value, he or she must be able to do so without warranty. Valuation, like designation of property as being either community or separate, is an issue on which reasonable views often differ, *and in the absence of concealment of assets*—or facts materially affecting their value—a property settlement agreement may not later be set aside solely on the basis of the managing spouse's inaccurate opinion of value or on his or her refusal to have rendered such opinion. [Fn. omitted.]" (Italics added.)

The strength of the policy of our law requiring full disclosure of all community assets so that the court may properly make an equal division thereof is further manifested by the rule stated in *In re Marriage of Elkins,* 28 Cal.App.3d 899 [105 Cal.Rptr. 59], which also impinges upon the validity of the property settlement in this case as a disposition of respondent's rights to the pension benefits. In *Elkins,* the property settlement agreement, which did not disclose the existence of pension rights on the basis of "[a]n undisclosed oral 'side agreement' " (28 Cal.App.3d at p. 903), was held to constitute "a deception upon the court" (*id.*), and the denial of a motion to vacate the judgment "insofar as the division of community property is concerned" (28 Cal.App.3d at p. 904), was reversed. The court said (28 Cal.App.3d at p. 903): "We deem such an undisclosed agreement to be against public policy because of the inherent deception and because of the positive terms of the statute, and to create no rights for either party to the unmentioned community property. Indeed, it has long been the rule that property which is not mentioned in the pleadings as community property is left unadjudicated by decree of divorce, and is subject to future litigation, the parties being tenants in common meanwhile. (*Metropolitan Life Ins. Co.* v. *Welch,* 202 Cal. 312 [260 P. 545]; *Maxwell* v. *Maxwell,* 66 Cal.App.2d 549 [152 P.2d 530]; *Estate of Williams,* 36 Cal.2d 289 [223 P.2d 248, 22 A.L.R.2d 716]; *Wilkinson* v. *Wilkinson,* 12 Cal.App.3d 1164, 1168 [91 Cal.Rptr. 372]; *In re Marriage of Karlin,* 24 Cal.App.3d 25, 34 [101 Cal.Rptr. 240].) But under the Family Law Act there is no other disposition possible, once the community character of the property has been established, as it has been in the case before us, and no written contract having been made, than to make the division required by Civil Code section 4800, subdivision (a). If it were not so, the parties themselves could virtually write an exception to section 4800, in addition to those which the Legislature has made (written agreement or oral stipulation in open court), namely, an oral

agreement made privately and not in open court. A fair reading of the section shows that it was at least one intention of the Legislature that oral agreements, such as the one asserted by respondent herein, should not be effectual."

The rule stated in *Elkins* is approved by our Supreme Court in the opinion in *In re Marriage of Brown,* 15 Cal.3d 838, 851 [126 Cal.Rptr. 633, 544 P.2d 561].

Petitioner seeks to avoid the effect of the rule requiring full disclosure of all community assets on the basis of the amendments to the California Civil Code, effective January 1, 1975, whereby both spouses were given management and control of the community property in lieu of the husband's exclusive management and control which existed at the time the above cases were decided. Petitioner asserts in this connection that these modifications were "specifically made retroactive to indicate that the husband no longer has management and control of the community property and it follows therefore that he is not in a fiduciary relationship with the wife, but rather that they operate at arms length and each stand in the same position."

The Civil Code sections in question are sections 5125, relating to community personal property, and 5127, relating to community real property. The amendments to these sections, effective January 1, 1975, deleted the former provisions giving the husband management and control. Consistent therewith, section 5105 was simultaneously amended to delete the reference to "the management and control of the husband as is provided in sections 5125 and 5127." ■ Petitioner's assertion, however, that these amendments operate retroactively to validate the marital settlement agreement made in this case in 1974 is without foundation. Both sections 5125 and 5127 are specifically made applicable to property "whether acquired before or after January 1, 1975." (Stats. 1974, ch. 1206, § 1, p. 2609.) That is the extent of their retroactivity. Section 7 of Statutes 1974, chapter 1206, page 2609, which enacted the amendments to sections 5125 and 5127, specifically provides: "This act shall not apply to or affect any act or transaction which occcured prior to January 1, 1975." Consideration must also be given in this respect to the provisions of section 3 of the Civil Code which states: "No part of it is retroactive, unless expressly so declared."

■ We, therefore, conclude that as of the time the marital settlement agreement was executed and as of the time petitioner procured the

interlocutory decree herein, he was under a fiduciary duty to disclose the existence of all community assets, and his failure to disclose the existence of the retirement benefits constituted a constructive fraud upon respondent.[2]

Having concluded that the court properly found the existence of extrinsic fraud justifying the exercise of the court's equity power to vacate the judgment, it is unnecessary to discuss the other findings upon which the order was based.

■ The facts set forth in respondent's declaration do not establish laches as a matter of law. From respondent's statement that she first consulted an attorney in March 1975, after entering into the marital settlement agreement in 1974 without benefit of counsel, it may be inferred that she did not appreciate her rights until that time. Her delay thereafter to avoid interfering with the oldest child's marriage does not justify petitioner's characterization "that she had a lackadaisical attitude toward this whole matter." A delay from April to August in 1975 did not require the court to deny relief based upon laches.

Petitioner's claim of prejudice "that it will be time consuming and cause him great expense in relitigating the whole issue of dissolution of marriage and community property rights" is not prejudice arising out of delay. Such prejudice would result whenever the decree was set aside.

The order appealed from is affirmed.

Cobey, Acting P. J., and Allport, J., concurred.

---

[2]We do not mean to suggest that these amendments, if applicable, would destroy the husband's fiduciary duty to the wife. Under the circumstances, it is unnecessary to decide that question.