[L.A. No. 31143. June 30, 1980.]

In re the Marriage of DUCK SOON and SANG HYUB PARK.
DUCK SOON PARK, Appellant, v.
SANG HYUB PARK, Respondent.

338

**COUNSEL**

Darryl Leemon for Appellant.

Selwyn & Capalbo, Herbert E. Selwyn and Sandra Kamenir for Respondent.

**OPINION**

**BIRD, C. J.**—Appellant challenges the denial of her motion to vacate a judgment of dissolution of marriage entered after her deportation to Korea.[1]

---

[1]Appellant also sought to amend the petition for dissolution to include a petition for the nullity of her marriage. This court has not been asked to review the denial of that proposed amendment.

I

Appellant wife and respondent husband were married on May 28, 1968, and separated on August 23, 1972. On September 18, 1972, Mrs. Park's attorney of record filed a petition for dissolution. On October 19, 1972, an order to show cause hearing was held and Mrs. Park was awarded custody of the children, child support and exclusive possession of the family home.

On September 24, 1973, a judgment of dissolution was entered with custody of the children, as well as substantially all the community property, being given to the husband. Mrs. Park seeks to vacate this judgment. She bases her claim on certain events that she stated occurred between the order to show cause hearing and the judgment of dissolution.

During the pendency of the dissolution proceeding, the Immigration and Naturalization Service (INS) ordered appellant to leave the United States. Her immigration attorney applied for a stay of deportation. However, sometime after January 8, 1973, she was notified by the INS to report for deportation on January 15, 1973. Although her attorney advised her that she would not be deported, she was arrested on January 15, 1973, in her home by the INS and immediately sent to Korea. The only belongings she was able to take had to be packed in a single suitcase. Her husband was present at her arrest. Due to the swiftness of her deportation, she was unable to notify her attorney in the immigration matter or her attorney in the dissolution proceeding. Neither of them or the court was aware of her departure.

In Korea, Mrs. Park enlisted the aid of an interpreter to send a letter to her attorney in the dissolution matter. Unfortunately, this letter, which detailed the circumstances of her deportation, was returned unopened.

On August 24, 1973, an interlocutory hearing was held at which a new attorney appeared on Mrs. Park's behalf. The original attorney of record had been appointed a court commissioner so he asked another attorney to appear in his place. (See Gov. Code, § 68082.)[2] No formal substitution of attorneys was ever filed with the court (see Code Civ. Proc., § 284), and Mrs. Park never received notice of the informal substitution.

[2]Government Code section 68082 provides: "During his continuance in office, a court commissioner, judge of a court of record, or county clerk shall not practice law in any court of this state or act as attorney, agent, or solicitor in the prosecution of any claim

At the hearing, the court was informed for the first time that Mrs. Park was in Korea. No indication was given by either counsel or Mr. Park that Mrs. Park had been involuntarily deported. On the contrary, the testimony of Mr. Park and the statements of his attorney suggested a voluntary departure.[3]

The attorney who appeared on behalf of Mrs. Park apparently did nothing on her behalf. He had never met Mrs. Park and was unaware of the cause of her absence. There was no attempt to move for a continuance, to challenge Mr. Park's testimony, or to present evidence on Mrs. Park's behalf. Further, the new attorney failed to inform the court commissioner who presided at the interlocutory hearing that another commissioner had refused to hear the matter earlier that day because there was no substitution of attorneys on file and no recent financial declaration.

Following the hearing, the court awarded Mrs. Park the 1972 Dodge automobile, and some items of furniture and personalty which were in her possession and control. The children and the remaining community property, including two businesses and the equity in the home, were awarded to Mr. Park. Final judgment was entered on January 16, 1974.

---

or application for lands, pensions, patent rights, or other proceedings before any department of the state or general government or courts of the United States. As used in this section, the practice of law includes being in partnership or sharing fees, commissions, or expenses in the practice of law with any person acting as an attorney in this state."

[3]The following remarks by Mr. Park and his counsel are illustrative:
The Court: "Do you have a complete property settlement agreement?"
Husband's Counsel: "No, Your Honor. The petitioner is living in Korea now. [¶] She left Mr. Park with the children, the assets and the debts...."
" . . . . . . . . . . . . . ."
The Court: "Why haven't you been able to enter into a property settlement agreement?"
Husband's Counsel: "Because the wife is Korea [*sic*]. The wife left the children and the husband and is now in Korea, and there is an enormous amount of hostility...."
" . . . . . . . . . . . . ."
Husband's Counsel: "And did she, in January of this year, leave you with the two children?"
Husband: "Yes."
Husband's Counsel: "And she is now back in Korea?"
Husband: "Yes."
" . . . . . . . . . . . . ."
Husband's Counsel: "Now, did your wife take the 1972 Dodge with her?"
Husband: "Yes."
Husband's Counsel: "When she left the house?"
Husband: "Yes."
Husband's Counsel: "And about half of the furniture and one of the televisions?"
Husband: "Yes."

In February of 1977, Mrs. Park was granted permission to reenter the United States which she did on June 24th. For the first time, she learned of the judgment of dissolution. It was at this point that she hired an attorney to seek the vacation of that judgment. Such a motion was filed on August 11, 1977.

In support of her motion to vacate, Mrs. Park filed a sworn affidavit which indicated that "[a]fter my letter directed to my attorney...was returned to me in the mail, I did not know what else I could do to reach him, except to return to the United States as quickly as possible." Mrs. Park had immediately sought reentry into the United States but her application was not granted until well after the judgment of dissolution was entered.

The trial court refused to grant the motion to vacate and this appeal ensued.

## II

A final judgment may be set aside by a court if it has been established that extrinsic factors have prevented one party to the litigation from presenting his or her case. (*Olivera* v. *Grace* (1942) 19 Cal.2d 570, 575 [122 P.2d 564, 140 A.L.R. 1328].) The grounds for such equitable relief are commonly stated as being extrinsic fraud or mistake. However, those terms are given a broad meaning and tend to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing. It does not seem to matter if the particular circumstances qualify as fraudulent or mistaken in the strict sense. (*Zastrow* v. *Zastrow* (1976) 61 Cal.App.3d 710, 716 [132 Cal. Rptr. 536]; *In re Marriage of Coffin* (1976) 63 Cal.App.3d 139, 149 [133 Cal.Rptr. 583]; *Davis* v. *Davis* (1960) 185 Cal.App.2d 788, 794 [8 Cal.Rptr. 874].) For example, in *Landon* v. *Landon* (1946) 74 Cal. App.2d 954 [169 P.2d 980], the husband was stranded in China at the outbreak of World War II and consequently, was unable to attend the dissolution proceeding. Aware of her husband's predicament and his unsuccessful attempts to return to this country, the wife concealed those facts from the court. As a result of this concealment, a default judgment was entered. When the husband asked the trial court to vacate its judgment, the court granted his motion and the Court of Appeal affirmed. It held that "[t]he concealment of facts which, if revealed to the trial court, might result in the postponement of an adjudication until

the absent party can be heard constitutes extrinsic fraud." (*Id.*, at p. 957.)

 ■ In the present case, Mrs. Park's involuntary deportation rendered her incapable of attending her dissolution proceeding. Mr. Park was well aware of his wife's inability to be present and contest the action. Disclosure of his wife's disability to the court might have resulted in the postponement of the dissolution proceeding until Mrs. Park could be present. Clearly, Mr. Park had a duty to inform the court of the extrinsic facts that prevented his wife's attendance. (*Id.*; see also *Olivera v. Grace, supra*, 19 Cal.2d at p. 577; *Edison v. Edison* (1960) 178 Cal. App.2d 632, 634 [3 Cal.Rptr. 201].) By concealing those facts, Mr. Park breached his duty of disclosure and perpetrated a fraud upon the court as well as his wife. (*Edison v. Edison, supra*, 178 Cal.App.2d at p. 634; *Olivera v. Grace, supra*, 19 Cal.2d at p. 577; *Rice v. Rice* (1949) 93 Cal.App.2d 646, 651 [209 P.2d 662].)[4]

 Mrs. Park's representation at the adversary hearing by another attorney does not alter the fact that she was denied a fair hearing. Her original attorney did not file a formal substitution of attorneys pursuant to Code of Civil Procedure section 284. Further, Mrs. Park never consented to the new attorney's representation. ■ Therefore, unless it can be established that the new attorney was "associated" with the attorney of record, the former should not have been recognized by the trial court as appearing on behalf of Mrs. Park. (See *Wells Fargo & Co. v. City etc. of S.F.* (1944) 25 Cal.2d 37, 42-43 [152 P.2d 625].) This court has never explicitly defined the term "associated." However, an attorney will not be considered an associated attorney where he "attempts to act as the sole attorney." (*Id.*, at p. 43.) The facts in the present case indicate that the new attorney attempted to act in precisely that manner. When asked by the court, "[a]re you the attorney of record, counsel?" the new attorney replied, "I think there's been a substitution filed. I hope there has." He was the only attorney who appeared in court on behalf of Mrs. Park. Following the appointment as court commissioner of the attorney of record, all court documents were sent to and signed by the new attorney as attorney for Mrs. Park.

[4]Equitable relief might also be given based solely on Mrs. Park's deportation and her attorney's appointment as court commissioner. (Cf. *Weitz v. Yankosky* (1966) 63 Cal. 2d 849 [48 Cal.Rptr. 620, 409 P.2d 700]; see also *Dingwall v. Vangas, Inc.* (1963) 218 Cal.App.2d 108, 113 [32 Cal.Rptr. 351].) However, in light of the clear presence of extrinsic fraud, it is not necessary to address this alternative theory for relief.

There are some additional facts that militate against considering the attorney, who purportedly appeared on behalf of Mrs. Park, as an associated attorney. First, Mrs. Park never consented to his representation. She wasn't even notified of his actions. Moreover, there was no reason for her to expect that another attorney would be "associated" on the case. Second, it is unlikely that Mrs. Park's original attorney intended that an association be formed since it would have been a violation of the law if the attorney of record (now a court commissioner) remained associated on the case. (See Gov. Code, § 68082.) Finally, the record seems to indicate that Mr. Park's attorney believed the new attorney was acting as sole counsel for Mrs. Park. During the court's questioning of the new attorney, Mr. Park's counsel interjected, "the *last* attorney of record, Your Honor . . . as you know, has been elevated to commissioner." (Italics added.)

The record indicated that the new attorney was not associated on the case. Therefore, the trial court should not have so recognized him. As a result, the court was without authority to enter judgment other than by default. (*McMunn* v. *Lehrke* (1915) 29 Cal.App. 298, 308 [155 P. 473]; see also *Wells Fargo & Co.* v. *City etc. of S.F., supra*, 25 Cal.2d at pp. 42-43; *Epley* v. *Califro* (1958) 49 Cal.2d 849, 854 [323 P.2d 91].)

■ However, it is not necessary for the court to conclude that no attorney properly appeared on Mrs. Park's behalf to find that she was denied a fair adversary hearing. (*Saunders* v. *Saunders* (1958) 157 Cal.App.2d 67, 72-73 [320 P.2d 131]; see also *Olivera* v. *Grace, supra*, 19 Cal.2d at pp. 577-578; *Dei Tos* v. *Dei Tos* (1951) 105 Cal.App.2d 81, 83 [232 P.2d 873].) The inadequacy of the new attorney's representation is a further basis for holding that Mrs. Park was deprived of a fair adversary hearing.

The attorney purporting to appear on Mrs. Park's behalf never consulted with his "client." He did not even know that she had been deported.[5] No investigation was made of Mr. Park's alleged valuation of the community assets and no objection was made to the use of a year old financial statement as the basis upon which to divide the community property. No evidence was offered on behalf of Mrs. Park and no attempt was made to cross-examine Mr. Park, the only witness to testify

---

[5]As a result, the new attorney could not have known Mrs. Park's feeling about the custody of her children, her estimate of the value of the community property, or the amount and value of the property that she took with her to Korea.

at the dissolution hearing.[6] Under these circumstances, it would be an exaltation of form over substance to conclude that the mere presence of an attorney resulted in a fair adversary hearing sufficient to foreclose the remedy of equitable relief.

■ However, a motion to vacate a judgment should not be granted where it is shown that the party requesting equitable relief has been guilty of inexcusable neglect or that laches should attach. (See *Olivera v. Grace, supra*, 19 Cal.2d at p. 575; *Wilson v. Wilson* (1942) 55 Cal. App.2d 421, 427 [130 P.2d 782]; *Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 473 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368].) Mr. Park argues that there was inexcusable neglect because Mrs. Park did not notify the court or her counsel of her deportation. He also asserts that the motion to vacate was filed too long after the interlocutory decree was entered. In passing on this argument, the court must look to the extent of prejudice to the opposing party, and to the reasonableness of the moving party in not filing the motion to vacate earlier. (*Weitz v. Yankosky, supra*, 63 Cal.2d at p. 857; see also *Hallett v. Slaughter* (1943) 22 Cal.2d 552, 556-557 [140 P.2d 3].) In the present case, no claim of prejudice has been articulated by Mr. Park or his attorney.[7] Further, Mrs. Park was arrested for involuntary deportation in front of her husband. The immigration lawyer knew of the possibility of Mrs. Park's deportation and knew who was representing her in the dissolution proceeding, but did nothing.[8] Mrs. Park did not know that her original attorney in the dissolution had been appointed a court commissioner thereby removing him from her case. Under these circumstances, it was reasonable for Mrs. Park to assume that her husband or her attorney would inform the court of the involuntary nature of her absence. (Cf. *Orange Empire Nat. Bank v. Kirk* (1968) 259 Cal.App.2d 347, 353 [66 Cal.Rptr. 240] [reliance on one's attorney does not in and of itself constitute negligence]; see also *Weitz v. Yankosky, supra*, 63 Cal.2d 849; *Hallett v. Slaughter, supra*, 22 Cal.2d 552.)

[6]The sum total of the attorney's participation at the dissolution proceeding consisted of four inconsequential remarks. Quite fittingly, two of those remarks were, "I have nothing to add to that, Your Honor" and "I have nothing, Your Honor."

[7]Although relitigation of the issue of dissolution and community property rights will be time consuming and cause additional expense, such prejudice does not arise out of the delay. Therefore, it cannot be considered in determining whether Mrs. Park's delay in bringing the motion to vacate was inexcusable. (*In re Marriage of Coffin, supra*, 63 Cal.App.3d at p. 155.)

[8]The immigration attorney had recommended the services of the original attorney of record in the dissolution proceeding to Mrs. Park. He also was the immigration attorney for Mr. Park.

After her deportation, Mrs. Park tried to reach her attorney by letter without success. She immediately applied for reentry into the United States and entered as soon as reentry was granted. Her failure to do any more was reasonably explained by her ignorance of the workings of our judicial system and her inability to communicate without the aid of an interpreter. (Cf. *Watson* v. *Watson* (1958) 161 Cal.App.2d 35 [325 P.2d 1011]; *Karlein* v. *Karlein* (1951) 103 Cal.App.2d 496 [229 P.2d 831].)

The speed with which Mrs. Park moved to vacate the judgment of dissolution once she learned of its entry also shows diligence. Less than a month after she learned for the first time that a judgment of dissolution had been entered against her, she employed an attorney to file a motion to vacate the judgment. Despite her problems with the language and culture, Mrs. Park attempted to challenge the court's action in her absence. This can scarcely be denominated inexcusable neglect.

Mr. Park next claims that relief should not be granted because the result would not be different on retrial. ■ However, Mrs. Park does not have to demonstrate with certainty that a different result would obtain on retrial. Rather, she must show facts indicating a sufficiently meritorious claim to entitle her to a fair adversary hearing. (*Olivera* v. *Grace, supra* 19 Cal.2d at p. 579; see also *Bennett* v. *Hibernia Bank* (1956) 47 Cal.2d 540 [305 P.2d 20].)

In this case, the division of the community property was made without the aid of an up-to-date financial declaration. Book value was used to assess the assets of the community in a one-year-old financial statement that was on file. Long term liabilities were used to offset assets without any consideration being given to the future receipts that the assets would produce. (Cf. *In re Marriage of Folb* (1975) 53 Cal.App.3d 862, 876 [126 Cal.Rptr. 306].) Finally, Mrs. Park was awarded only those "items of furniture and furnishings and personalty in her possession or control," despite the fact that Mrs. Park's "possessions" consisted only of those items she could hastily pack into a single suitcase on the day she was arrested. All these facts suggest that if Mrs. Park is properly represented at a new hearing, the judgment might well differ materially from that entered in September of 1973.

### III

■ As a result of extrinsic factors, Mrs. Park was deprived of a fair adversary hearing. There are no equitable defenses which would bar the relief she seeks. Accordingly, the trial court abused its discretion when it denied her motion to vacate.[9] The judgment is reversed.

Tobriner, J., Mosk, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.

---

[9]Mrs. Park also contends that Code of Civil Procedure sections 284, 285 and 286 were violated, thereby rendering the judgment of dissolution void or voidable. However, in light of the disposition of the extrinsic fraud or mistake claim, it is not necessary to address the merits of Mrs. Park's procedural objections.