[No. B021054. Second Dist., Div. Five. Oct. 29, 1987.]

In re the Marriage of RAMONA ESTELLE and MACK L. JONES.
MACK L. JONES, Appellant, v.
RAMONA ESTELLE JONES, Respondent.

**COUNSEL**

Benjamin P. Wasserman for Appellant.

Linda S. Gross for Respondent.

## OPINION

**ASHBY, J.**—This appeal is brought to challenge the setting aside of an interlocutory judgment and final judgment of dissolution of marriage upon a finding of extrinsic fraud.

### STATEMENT OF FACTS

Mack L. Jones (Husband) and Ramona Estelle Jones (Wife) were married on September 3, 1966. During a period of marital strife, in January 1981, the parties went to the law office of Benjamin Wasserman, Husband's attorney. Wife was not represented by counsel. At this meeting, a marital settlement agreement was discussed and both parties executed a settlement document. Five days later a petition for dissolution of marriage was filed by Attorney Wasserman naming Husband as petitioner.

During the summer, 1981, Husband told Wife that he had told Attorney Wasserman to "cancel the papers" and that Wife should " '. . . not worry about a thing.' " Contrary to Husband's promise, Husband obtained an interlocutory judgment of dissolution of marriage at a default hearing[1] which thereafter was purportedly served on Wife. On March 30, 1984, a final judgment of dissolution of marriage was entered and purportedly served on Wife.

In 1981, after the parties separated, and until the summer of 1985, Husband contributed to Wife's support including paying for Wife's first and last month's rent, furniture, automobile insurance, and certain credit card bills.[2]

In July 1985 Husband discontinued his financial assistance to Wife. Immediately thereafter, Wife retained counsel and on August 27, 1985, a second petition for dissolution of marriage was filed by Wife which was subsequently served on Husband. Thereafter, Wife filed an order to show cause (OSC) requesting, among other items, spousal support. At the OSC hearing Husband failed to appear and the court ordered, among other orders, spousal support for Wife. After learning of the spousal support order, Husband contacted his attorney, who in turn informed Wife she was not entitled to support because a final judgment of dissolution was entered 19 months earlier.[3] Wife filed a motion to set aside and vacate the

---

[1] The essential provisions of the interlocutory decree were as follows: custody of the parties' son was awarded to Husband, Husband was to pay Wife $50,000 January 1984, Wife was to transfer all interest in the parties' business to Husband and both parties waived spousal support.

[2] The exact amount of monies paid by Husband has not been determined.

[3] The spousal support order was subsequently set aside.

interlocutory judgment and final judgment and requested that the marital settlement agreement be set aside on the ground of fraud.

A hearing was held on Wife's motion, at which time the court set aside the interlocutory and the final judgments of dissolution. The court found that Wife's reliance upon Husband's statement that he was going to cancel the papers constituted extrinsic fraud.[4] However, the court denied Wife's motion to set aside the marital settlement agreement without prejudice. Wife's subsequent motion for reconsideration was denied.[5]

Husband brings this appeal contending that the court erred in finding extrinsic fraud and in setting aside the interlocutory and final judgments of dissolution. In Wife's responsive brief, she contends that the finding of extrinsic fraud was appropriate and that such a finding required that the marital settlement agreement also be set aside.

### EXTRINSIC FRAUD

■■■ Husband contends that the evidence was insufficient to support a finding of extrinsic fraud and that the interlocutory and final judgments should not have been set aside. Husband's contention lacks merit.

After weighing all the evidence the trial court made a factual finding that Husband said he was "cancelling the papers." The trial court had before it Husband's declaration, Attorney Wasserman's declaration, the parties' son's declaration, the declaration of Laura Walker (Attorney Wasserman's secretary in Jan. 1981), and Wife's declaration. Even though there was contrary evidence, according to Wife's declaration Husband told Wife to "'forget it'" and "'. . . not [to] worry . . .'" because Husband "had told his attorney to cancel the papers . . . ."[6] These statements, taken "in the light most favorable to the trial court's determination, drawing all reason-

---

[4] A full hearing to determine all factual issues was not held and the court did not resolve the numerous factual disputes. The parties disagreed as to the number of times they met with Attorney Wasserman; the validity of Wife's execution of the dissolution documents; the fairness of the distribution of community assets as outlined in the interlocutory judgment; the fair value of the community property assets; the accuracy of statements in the marital settlement agreement; Wife's working status at the time of the interlocutory decree; the effectiveness of service on Wife of various documents; the amount of monies paid to Wife by Husband and the purpose of such payments; the advice given to Wife by Attorney Wasserman regarding the execution of the marital settlement agreement; and the contents of the marital settlement document when executed by Wife.

[5] In denying Wife's motion for reconsideration, the trial court urged Wife to bring an independent action in civil court to have the marital settlement agreement set aside.

[6] Statements of one witness, even a party to the proceeding, can provide sufficient facts upon which a court may base its decision. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].)

able inferences and disregarding all contradictory evidence" (*In re Marriage of Adkins* (1982) 137 Cal.App.3d 68, 75 [186 Cal.Rptr. 818]; *Campbell* v. *Southern Pacific Co.* (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 583 P.2d 121]) and resolving any conflict in the affidavits as favoring the prevailing party (*In re Marriage of Coffin* (1976) 63 Cal.App.3d 139, 149 [133 Cal.Rptr. 583]) adequately support the trial court's factual finding.

Contrary to Husband's assertion, and based upon the trial court's factual determination, a finding of extrinsic fraud is appropriate. ██ After the time for a motion under Code of Civil Procedure section 473 has expired, an interlocutory judgment and final judgment of dissolution of marriage may be set aside only upon a finding of extrinsic fraud or mistake and not upon a finding of intrinsic fraud. (*Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 470-473 [165 Cal.Rptr. 792, 612 P.2d 882].)

Extrinsic fraud encompasses situations in which one party has prevented another from a fair adversary hearing, the defrauded party was deprived of the opportunity to present his or her claim or defense to the court and prevented from fully participating in the proceeding. (*United States* v. *Throckmorton* (1878) 98 U.S. 61 [25 L.Ed. 93]; *In re Marriage of Park* (1980) 27 Cal.3d 337, 342 [165 Cal.Rptr. 792, 612 P.2d 882]; *In re Marriage of Brennan* (1981) 124 Cal.App.3d 598, 603, 605 [177 Cal.Rptr. 520].) In constrast, intrinsic fraud is where parties have the opportunity to present their case but unreasonably fail to protect themselves. (*Kulchar* v. *Kulchar, supra,* 1 Cal.3d at p. 472; *In re Marriage of Brennan, supra,* at p. 603.)

Extrinsic fraud has been found when parties, in good faith, rely upon the fraudulent representations of their spouse resulting in their not acting to protect their interests. (*In re Marriage of Brennan, supra,* 124 Cal.App.3d 598 [dissolution decree set aside when husband obtained decree contrary to his representations that he would not proceed and that the dissolution would be "dropped"]; *In re Marriage of Nicolaides* (1974) 39 Cal.App.3d 192 [114 Cal.Rptr. 56] [interlocutory and final judgments amended because husband, without wife's knowledge and contrary to his representations, presented documents to the court with modifications].)

██ When Husband told Wife he was cancelling the papers, Husband lulled Wife into believing that the dissolution would not proceed, deliberately keeping Wife in ignorance of the proceeding. While Husband continued to contribute to Wife's support, there was no reason for Wife to believe her marital status had changed or that her property rights needed protection. Although Wife may have executed documents, she reasonably believed the documents had no legal effect on her marital status or her property rights. ██ Wife was not represented in this matter by counsel

who could have apprised her of her rights.[7] ■ Based upon Husband's representations and actions, Wife discontinued her involvement in the adversary proceeding while Husband proceeded to obtain a default judgment.

Wife brought her motion as soon as she became aware of the need to protect herself. Any delays were caused by her reliance upon Husband's representation that he was going to "cancel the papers" and not upon Wife's own lack of diligence. Because Husband obtained a dissolution, contrary to his representations, the finding of extrinsic fraud was appropriate.[8]

## MARITAL SETTLEMENT AGREEMENT

■ Wife contends that because the interlocutory decree was vacated, the marital settlement agreement must also be set aside.[9] We agree. The trial court's finding of extrinsic fraud also requires setting aside the marital settlement agreement.[10]

To determine if a marital settlement agreement is merged into an interlocutory decree, the intent of the parties (*Jackson* v. *Jackson* (1967) 253 Cal.App.2d 1026, 1034 [62 Cal.Rptr. 121]) and the language of the marital settlement agreement are factors to be considered. (*Noice* v. *Noice* (1961) 195 Cal.App.2d 204, 210-211 [15 Cal.Rptr. 703]; *Plummer* v. *Superior Court* (1942) 20 Cal.2d 158, 162.) If the agreement contemplates that it will be presented to the divorce court, there is strong evidence of merger. (*Jackson* v. *Jackson, supra,* at pp. 1034-1035.) The marital settlement agreement in issue is very explicit in this regard: "It is our intention that the executor[y] provisions of this Agreement shall be incorporated into the

---

[7] "[I]ndependent advice is not indispensable in a marriage dissolution proceeding, but it is a circumstance to be considered in determining whether fraud has been practiced on a disadvantaged party." (*In re Marriage of Brennan, supra,* 124 Cal.App.3d at p. 604, fn. omitted.)

[8] We decline to award sanctions to Wife, as requested, as they are not appropriate in this matter.

[9] Unlike *In re Marriage of Testa* (1983) 149 Cal.App.3d 319 [196 Cal.Rptr. 780], Wife's original motion in the trial court requested that the marital settlement agreement be set aside and requested that the interlocutory and final judgments be vacated.

[10] Husband contends that this issue cannot be decided on appeal because errors raised by respondents are not ordinarily reviewable on appeal. (*Whalen* v. *Smith* (1912) 163 Cal. 360, 362-363 [125 P. 904].) However, this rule is not inflexible. The extrinsic fraud tainted all dealings between the parties and is so inextricably intertwined with their rights that we must address this issue in order to reach an equitable result. (*Mott* v. *Hortsmann* (1950) 36 Cal.2d 388, 393 [224 P.2d 11]; *Resnik* v. *Superior Court* (1986) 185 Cal.App.3d 634, 637-638 [230 Cal.Rptr. 1]. Cf. *In re Marriage of Gonzalez* (1976) 57 Cal.App.3d 736, 748 [129 Cal.Rptr. 566].) Further, to refrain from addressing this issue would unnecessarily result in a multiplicity of suits, prolonging a bitter dispute rather than promptly resolving it. (Cf. *Resnik* v. *Superior Court, supra,* 185 Cal.App.3d 634.)

Interlocutory Judgment and Final Judgment of Dissolution to be entered in this matter."

Physical incorporation of the words of the agreement in the body of the decree also evidence merger. (*Jackson* v. *Jackson, supra,* 253 Cal.App.2d at p. 1034.) Here the executory provisions of the marital settlement agreement are found in the interlocutory decree.[11]

Thus, the marital settlement agreement was merged into the interlocutory decree. Under the circumstances, the court erred when it failed to set aside the marital agreement. ■ Marital settlement agreements merged into interlocutory judgments become part of a judgment and enforceable by contempt. Marital settlement agreements not merged into an interlocutory decree are enforceable as a contract. (*Flynn* v. *Flynn* (1954) 42 Cal.2d 55, 58 [265 P.2d 865]; *In re Marriage of Lane* (1985) 165 Cal.App.3d 1143, 1147 [211 Cal.Rptr. 262].) A merged " '. . . separation agreement is superseded by the decree, and the obligations imposed are not those imposed by contract, but are those imposed by decree, and enforceable as such. Once the contract is merged into the decree, the value attaching to the separation agreement is only historical.' " (*Hough* v. *Hough* (1945) 26 Cal.2d 605, 609-610 [160 P.2d 15], italics omitted.) "Merger, then, replaces the obligations of the contract with those of the decree [and] the merger itself has extinguished the contract's obligations." (*Zastrow* v. *Zastrow* (1976) 61 Cal.App.3d 710, 714 [132 Cal.Rptr. 536].) Thus, if an interlocutory decree in which a marital settlement agreement has been merged is set aside, the marital settlement agreement must also be set aside.[12]

■ Here, at a meeting in January 1981, among Husband, Husband's attorney, and Wife who was unrepresented by counsel, the parties executed a marital settlement agreement, which recited their intent that the agreement be integrated into the interlocutory and final judgments of dissolution.

---

[11] It is clear that the parties included the language of the marital settlement agreement into the interlocutory decree rather than physically attaching the document in accordance with their wishes and with the Los Angeles County Superior Court local rules. In 1981 the manual for family law department (Central Dist. L.A. County) rule 19 read as follows: "The executory provisions of any agreement or stipulation shall be set forth completely in any judgment in proper judgment language. Do not incorporate terms or provisions by reference. Attachments or riders are not allowed."

[12] "Where a moving party requests that a judgment incorporating a marital settlement agreeement be set aside so that issues governed by the marital settlement agreement can be reopened, it makes no sense to vacate the judgment if the marital settlement agreement cannot be set aside. Denial of a subsequent motion to vacate the marital settlement agreement would create a ludicrous situation where the interlocutory judgment approving the marital settlement agreement has been set aside, but the parties remain bound by the marital settlement agreement." (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1072 [202 Cal.Rptr. 116] [dictum].)

A few months later, Husband told Wife he had instructed his attorney to "cancel the papers" and that Wife should "'. . . not worry . . . .'" Although for the following four years Husband paid certain expenses for Wife, it was not determined that Wife received the main benefit of the settlement agreement, i.e, $50,000. After Husband ceased his support and asserted he had no further obligation to Wife under the prior default judgments, the trial court, on Wife's motion to set aside the judgments and the agreement, found extrinsic fraud in Husband's promise to "cancel the papers." Under all these circumstances, the marital settlement agreement must also be set aside in order to achieve justice between the parties without multiple litigation.

The order vacating the interlocutory and final judgments of dissolution is affirmed; the cause is remanded to the trial court with directions to set aside the marital settlement agreement and to conduct such further proceedings as may be necessary. Costs on appeal are awarded to Wife.

Feinerman, P. J., and Hastings, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 20, 1988.