[Civ. No. 16852.   Second Dist., Div. Three.   Sept. 19, 1949.]

KATHLEEN RICE, Respondent, v. JAMES C. RICE, Appellant.

William R. Law for Appellant.

F. Walter French and Frank J. Indovina for Respondent.

WOOD, J.—Appeal by defendant from an order granting a motion of plaintiff (1) to vacate an interlocutory decree of divorce, and (2) to file an amended complaint.

The complaint for divorce alleged that the community property of the parties included a certain house and two lots. That allegation was denied in the answer, and the cross-complaint alleged that there was no community property.

A principal question at the trial was whether said real property was separate or community property. The plaintiff and defendant testified at some length regarding the purchase of the lots and the source of the funds which were used to purchase the lots and to build the house. The testimony of defendant indicates that he was contending at the trial that the property was his separate property. The testimony of the plaintiff was to the effect that it was community property.

On March 3, 1948, an interlocutory decree of divorce was granted to plaintiff. It was decreed therein that one-half of said real property is community property. One-half of that community property (that is, one-half of one-half of the house and lots) was awarded to plaintiff, and the other half of that community property was awarded to defendant. It was also decreed that the house and lots should be appraised and that defendant might acquire the one-fourth interest of plaintiff by paying to plaintiff one-fourth of the appraised value, or that plaintiff might acquire the property by paying to defendant three-fourths of the appraised value; that in the event neither party desired to purchase the property, then the property should be sold and one-fourth of the proceeds should be paid

to plaintiff and three-fourths thereof should be paid to defendant; that said order should be carried into effect within 60 days from the entry of the decree. The furniture located in said house was adjudged to be community property, and it was awarded to defendant.

On October 10, 1946 (about one year before this action was commenced on September 10, 1947) defendant allegedly conveyed said property to one Nelda Davis; and on said date Nelda Davis executed a note for $5,000 payable to defendant and also executed a trust deed in favor of defendant covering said property, as security for the payment of the note.

On June 21, 1948, plaintiff made the motion above mentioned (to vacate the decree, and to file the amended complaint) upon the ground that defendant was guilty of fraud in permitting the court to award said real property to the parties as community property, apportioning one-fourth thereof to plaintiff and three-fourths to defendant, without disclosing to the court that defendant had deeded said property to a third person on October 10, 1946. The motion was also made upon all the grounds set forth in section 473 of the Code of Civil Procedure.

At the trial it was shown that plaintiff and defendant were married in 1918 in New Zealand and came to the United States about 1922; they acquired said real property about 1923; title thereto was originally in the name of plaintiff, but later it was transferred to the names of plaintiff and defendant; the purchase price of the property was paid from funds earned by defendant, part of which was his separate property—having been earned before the marriage; and plaintiff and defendant resided in said house until they separated in 1926, and since that time defendant has continued to live there. Plaintiff testified, at the trial, that the first time she learned that the title to the property was not in her name was when her counsel so informed her during this litigation; in 1925, she signed a document at defendant's request but she did not know the nature of the document; about 1945, when defendant was in a hospital, he stated to plaintiff, in a conversation relative to borrowing money, that they still owned the house; plaintiff ''signed something'' at a bank; and defendant never told her that she had no interest in the house. Defendant testified that plaintiff ''deeded'' the property to him; he and plaintiff ''parted company financially'' in 1925, and they made an agreement at said time that plaintiff should have certain money and diamonds and that she should give defendant a quitclaim

deed to the house. In rebuttal the plaintiff denied that they had made such an agreement. About November, 1925, while plaintiff was preparing to go to Australia, defendant made and signed a written statement for her use in connection with her return to the United States, in which he said that the property here involved was purchased by plaintiff and that it would be the permanent home of the parties. In 1942, while he was in the hospital, he wrote to plaintiff and said that ''They know we own real estate on the hill.''

In plaintiff's affidavit, in support of said motion, she referred to the testimony given at the trial, hereinabove mentioned, and in addition thereto stated that shortly after February 10, 1948, she was advised that a title report showed record title to said property to be in one Nelda Davis; that at the trial on February 19, 1948, defendant referred to said property as the ''home on the hill'' and at no time disclosed that Nelda Davis had any interest in said property; that in his testimony, he did not mention the Davis deed nor the trust deed made by Nelda Davis securing the $5,000 note; and that at the conclusion of the trial, when the judge announced that he was awarding one-fourth of the property to plaintiff as community property, neither the defendant nor his attorney protested or asked leave to prove that said property belonged to Davis.

In defendant's affidavit, in opposition to the motion, he stated that no fraud was practiced upon the court or upon the plaintiff; that several weeks prior to the trial the attorney for plaintiff informed the attorney for defendant that plaintiff knew that said property had been transferred by defendant to some other person, and that when the divorce action was over if plaintiff did not get what she thought she was entitled to she intended to file suit to set aside the transfer; and that the deed to Nelda Davis was recorded on October 14, 1946.

Appellant (defendant) contends that there was no fraud. He argues that the testimony shows that the title to the property was not in defendant's name. The testimony so referred to by defendant was his answer to a question by plaintiff's attorney. The question and answer were as follows: ''Q. Does title stand in your name? A. No, sir; I have had other property.'' Apparently defendant contends that the court should have understood from said answer that the title to the property stood in the name of a third person. That answer indicates that the title was not in defendant's name,

but it does not necessarily indicate that the title stood in the name of a third person. Such answer was not inconsistent with title being in the name of defendant and plaintiff or in the name of plaintiff. The part of the answer following the words ''No, sir'' was not responsive to the question and was meaningless and evasive. As above shown, that question was not asked by defendant's attorney. It was asked by the attorney for plaintiff immediately after the attorney for defendant had announced that ''The defendant will rest.'' Thereafter the attorney for defendant did not ask any questions. It appears from statements of the trial judge, near the beginning and at the close of the trial, that the judge was under the impression that the title to the property was in the name of one or both of the parties. Near the beginning of the trial, while plaintiff was a witness, the following occurred: ''Q. [by attorney for plaintiff] When did you first learn your property was not in your name any longer? A. When you told it to me. Q. Was that at the time this action was filed? MR. LAW [attorney for defendant]: I object to your going into that. No issue here on setting aside a deed. MR. INDOVINA [attorney for plaintiff]: It will be linked up. THE COURT: There is an allegation that the community property consists of a house. The fact that there is a question now as to whose name it is being held in doesn't necessarily affect that allegation. MR. LAW: Maybe it doesn't affect the allegation. If he is seeking to set aside a document that was transferred to him, I would like to have it pleaded. THE COURT: Paragraph IV of the Complaint alleges this property is community property. *Whether the property is held in the wife's name or the husband's name, or both names jointly doesn't affect the status of the property.*'' (Italics added.) After the testimony had been completed and just before the judgment was announced, the judge stated that there is ''a conflict on the question of the purchase of this home and the deeding of the home by the wife to the husband. . . . I am going to determine that one-half was purchased out of the earnings of the husband in the State of California, after his arrival, and the other half were accumulated savings, which would not be community property. That the deeding thereafter was merely for the purpose of security in connection with her voyage overseas.'' It therefore appears that when plaintiff's attorney asked plaintiff, during the trial, when she first learned that the property was no longer in her name, the defendant objected to ''going into that'' and stated there was no issue on setting aside a deed. It also

appears that, at the close of the case, when the judge was apportioning the property and was discussing the question of the ownership and character of the property, the defendant remained silent regarding the facts that he had executed a deed purporting to convey the property to Nelda Davis and that Davis had executed the $5,000 note and the trust deed to secure the payment of the note. The defendant did not at any time during the trial disclose to the court that the property had been conveyed to a third person. The conduct of the defendant during the trial was such, with reference to the question of title to the property, that the judge was justified in believing that the title was in such condition that he could make an effective order apportioning the property. Defendant testified at the trial that he was still living in the house, and that most of the furniture which he and plaintiff had in the house was still there and that he would not take $1,000 for it. Defendant was questioned at length, in his own behalf, regarding the source of the funds used in purchasing the lots and building the house. Good faith on the part of the defendant required that he inform the court that he had conveyed the property to Davis. Under the circumstances here, the conduct of defendant constituted a fraud upon the court. The court has inherent power to set aside a judgment obtained through fraud perpetrated upon it. (*McGuinness* v. *Superior Court,* 196 Cal. 222, 231 [237 P. 42, 40 A.L.R. 1110].) Such a judgment may be attacked by motion. (*Cowan* v. *Cowan,* 72 Cal.App.2d 868, 871 [166 P.2d 21].) As above stated, the motion herein was made under the provisions of section 473 of the Code of Civil Procedure. Fraud is recognized as a ground for relief under said section. (*Difani* v. *Riverside County Oil Co.,* 201 Cal. 210, 216 [256 P. 210]; see, also, *In re Yoder,* 199 Cal. 699, 701 [251 P. 205].) Where the motion to set aside the judgment on the ground of fraud is made under said section "it is immaterial whether the fraud be extrinsic or intrinsic." (*Security-First Nat. Bank* v. *Hauer,* 47 Cal.App.2d 302, 307 [117 P.2d 952]; *Tomb* v. *Tomb,* 120 Cal.App. 438, 441 [7 P.2d 1104].) The motion was made within the period of time prescribed by said section, the judgment having been entered on March 3, 1948, and the notice of motion having been filed on June 21, 1948.

Appellant argues further that it was as much the duty of respondent to speak up and inform the court of the transfer of the property to Davis as it was the duty of appel-

lant to do so. It is true that plaintiff stated in her affidavit, in support of the motion, that about nine days before the trial she was advised that the record title to said property was held by Nelda Davis. It does not appear, however, that plaintiff joined the defendant in the alleged transfer of the property to Davis; and it appears that plaintiff did not know that she (plaintiff) had conveyed the property to defendant, if in fact she had so conveyed it. Although plaintiff had been advised that the record title was held by Davis, it does not appear that plaintiff had any reason to believe that the alleged transfer to Davis was valid. At the hearing of the motion, the attorney for plaintiff stated that about a week before the trial he called defendant's attorney by telephone and referred to the transfer as a ''phony transfer'' and asked him if he was going to urge in court that it was a bona fide transfer, and told him that if defendant urged in court that it was a bona fide transfer that plaintiff would have to file an action, and that he (plaintiff's attorney) would wait to see what the defendant would do in court. He stated further that defendant's attorney replied that he did not know what defendant would do—that defendant was unpredictable. It was not denied that that conversation was had. In view of that conversation, and in view of the facts that defendant was still in possession of the property, that he did not mention the Davis deed at the trial, that he was examined at length by his counsel as to the source of the funds used in acquiring the property, and that when plaintiff referred to a transfer of the property the defendant objected to ''going into that,'' plaintiff would have been justified in assuming that defendant did not regard the Davis deed as a bona fide conveyance of the property and that defendant was not relying upon that deed as a defense to plaintiff's claim to a part of said property. The issue at the trial with reference to the property was whether it was community property or the separate property of the defendant. Defendant did not contend at the trial that the condition of the title was such that the court could not make an effective order apportioning the property, but on the contrary he led the court and plaintiff to believe that the title was in such condition that the court could make such an order. If defendant regarded the Davis deed as genuine and effectual, it was his duty to inform the court regarding it.

The order is affirmed.

Shinn, P. J., and Vallée, J., concurred.