Filed 10/17/23  Avina v. Superior Court CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MARCO AVINA,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>     Respondent,<br><br>MARIA AVINA,<br><br>     Real Party in Interest and Respondent. | D080875<br><br><br>  (Super. Ct. No. 37-2020-00009196-CU-PT-NC) |

APPEAL from an order of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

Southwick Law Firm and Stanley K. Southwick for Plaintiff and Appellant.

No appearance for Respondent.

Law Office of Dianna Juengst Hunt and Dianna Juengst Hunt; Law Office of David P. Mayberry and David P. Mayberry for Real Party in Interest and Respondent.

On appeal, Marco Avina requests we reverse the trial court's order (Order) setting aside its judgment for appointment of directors pursuant to Corporations Code section 306 (Judgment). Marco contends the trial court erred when it vacated the Judgment because it relied on nonexistent procedural requirements to find that the Judgment was obtained through fraud on the court. We conclude the trial court did not abuse its discretion in setting aside the Judgment. We accordingly affirm the Order.

I.

A.

Jesus Avina and Arcadio Avina incorporated A & A: Grove Service and Produce (A & A) in 1986 and served as its initial directors. After Arcadio died, Jesus was declared A & A's sole director. In 2002, Marco and Marcial Avina, Jesus' sons, were appointed vice president and assistant vice president, respectively, of A & A. At that time, despite being authorized to do so, A & A had issued no shares of stock.

In August 2019, Jesus died intestate, leaving A & A with no directors. Marco searched A & A's files for share certificates but was unable to find any evidence that A & A had ever issued shares.

B.

In 2019, Jesus' wife, Maria Avina, filed a spousal property petition in the Probate Division of the San Diego Superior Court to confirm that Jesus' ownership interest in A & A was community property that now belonged to her. Both Marco and Marcial were served with and objected to the petition,

2

but in January 2022, the judge issued a spousal property order declaring Maria the sole person with an ownership interest in A & A.

In February 2020, Marco and Marcial brought a separate action in the San Diego Superior Court, seeking a declaration that A & A was a partnership in which Jesus had no ownership interest. Maria twice demurred, and in December 2021, the judge sustained Maria's second demurrer without leave to amend.

Stanley Southwick represented Marco and Marcial in both matters.

C.

Meanwhile, in February 2020, Marco, again represented by Southwick, filed a standalone petition for appointment of board of directors pursuant to section 306 (Petition) in the San Diego Superior Court. As relevant here, section 306 provides: "If . . . a corporation has not issued shares and all the directors resign, die, or become incompetent, . . . the superior court of any county may appoint directors of the corporation upon application by any party in interest." (Corp. Code, § 306, subd. (a).) The Petition, submitted by Southwick and verified by Marco under penalty of perjury, claimed that Marco and Marcial "[we]re the only interested parties in this matter."

Both Marco and Marcial remotely attended the March 2021 Petition hearing. The trial court administered an oath to Marco, who affirmed, under penalty of perjury, that none of Marco and Marcial's other siblings "contend that they have some ownership in the business." The trial court then asked: "As far as you know, is there any other person anywhere that contends that they have some ownership interest in this business?" Marco replied, "No."

Immediately after, the trial court asked Southwick if "there [was] anything else that [he] wanted to say," to which he responded that "the only thing [he] would [add]" was that "[his] clients are trying to operate their

3

business within the law, and what you're doing now is going to help them do that." The trial court said: "I assume after this is taken care of [Marco and Marcial] will issue stock certificates to each other -- or the company will issue stock certificates so that then there is a record of who the *owners* are . . . ." (Italics added.)

Shortly after this hearing, the trial court issued the Judgment appointing Marco and Marcial as A & A's directors.

### D.

About ten months later, however, Maria filed a motion to set aside the Judgment. Maria claimed she was unaware of the Petition and the Judgment until about three weeks prior. Had she known of the Petition, Maria said she, as the owner of A & A, would have objected and proposed that she be appointed to the board of directors. As relevant to this appeal, Maria contended Marco and Southwick had perpetrated a fraud on the court by failing to disclose her claimed ownership interest in A & A. Maria's motion apprised the trial court of the two other proceedings concerning A & A's ownership that were pending at the time of the Petition hearing and known to Marco, Marcial, and Southwick.

Marco opposed Maria's motion, and the trial court heard argument in May 2022. The court said it "view[ed] [Maria's motion] as a motion for leave to intervene. And so that's what we're going to decide today[.]" The court then stated: "[O]n my own motion, I want to set a hearing to determine whether the [J]udgment should be set aside." The court explained it was "not very happy" because when the Petition was heard, the court asked whether anyone else should have been involved, and "I think I was misled." The court noted: "[I]t's unusual for us to have cases with only one side[,]" and "[s]o any time I have a case with one side, I inquire as to whether there might be

4

anybody else out there that might have an interest"; the court was "very troubl[ed] that this was presented as a situation where nobody else had any [interest]." The court further stated that, independent of any statutory notice requirements, "when a judge makes [an] inquiry, there's a duty of candor. [¶] . . . [¶] The parties and the lawyers have to be honest with the judge."

Southwick denied that he or Marco had done anything wrong, claiming "[his] clients were truthful" and Marco correctly answered "no" to the court's question about anyone else claiming an interest in the company. However, Southwick later acknowledged that Maria claimed an ownership interest in A & A "by . . . virtue of" her assertion to ownership of shares of A & A in the probate matter. After Southwick further conceded that the probate matter was pending at the time of the Petition hearing, the trial court admonished that that information should have been disclosed at the hearing, "[b]ecause I asked about -- I didn't ask about a probate case because I didn't know about it. But I tried to determine if there was any other potential interested party." When Marco's counsel further claimed that "[section 306] doesn't require notice," the trial court opined that "fundamental fairness, in my view, would have indicated that Ms. Maria Avina should have had notice of this [P]etition[.]"

During the hearing, Southwick disclosed that Marco and Marcial issued stock in A & A to themselves "for sweat equity" after entry of the Judgment. Counsel for Maria also noted that Marco and Marcial sold a piece of property owned by A & A after the Judgment was issued.

The trial court stated, "regardless [of] whether intervention is allowed or not, I believe that I can, on my own motion, . . . address whether the judgment should be set aside. And that's what I intend to do . . . . I haven't decided yet, but I intend to address that at the next hearing." The trial court

5

explained that it acted under its "inherent power to set aside orders and judgments when the court has been defrauded."

E.

The trial court granted the parties an opportunity to brief the sua sponte motion to vacate and to further brief Maria's motion. Marco filed a declaration under penalty of perjury in which he stated:

> I recall the court asking me several questions about A & A['s] business and whether there may be anyone else with an interest in the company. I answered every question truthfully to the best of my ability. There was then and is still today, no other person holding any ownership or other type of interest in A & A [ ] except Marcial and me. I absolutely did not intend to, nor would I ever, defraud this court about anything.

Southwick, too, submitted a sworn declaration admitting he notified neither Maria nor her counsel about the Petition. Southwick reaffirmed his belief both then and "still" that Maria had "no cognizable interest whatsoever in A & A," and explained one reason he did not provide notice was because it "would have invited unnecessary and improper interference" by Maria and her counsel in the Petition proceedings.

During the June 2022 hearing, Southwick contended the sua sponte setting aside of a judgment required extrinsic fraud but that there could be none where, as here, there were not two parties to the underlying judgment. Southwick also argued that "[Marco] did not intend to defraud the court," as "[Marco] heard the court to say, does anybody have an interest in this corporation other than the two of you? And at the time and still today, in my opinion, no one else does have an interest."

6

F.

Shortly after, the trial court issued its Order vacating the Judgment because it "was obtained by way of 'a fraud upon the court.'" The court found that Marco's and Marcial's testimony that no one else had a potential interest in A & A "was incorrect," as Maria "was (and is) claiming an ownership interest in the corporation, and these three persons (Maria Avina, Marco Avina and Marcial Avina) are and were involved in litigation in other departments of the San Diego Superior Court over their competing claims to the corporation and its assets." The trial court expressly concluded it "would not have entered the [J]udgment, as requested by Marco Avina and Marcial Avina, if they had truthfully answered the Court's questions at the hearing, or if their attorney, Stanley Southwick, had disclosed that other litigation was pending in which Maria Avina was claiming an ownership interest in [A & A]."

In light of this disposition, the trial court denied as moot Maria's motion to the extent it sought to set aside the Judgment. The Order indicated that "the case reverts back to its pre-judgment status[,]" and accordingly "[a]ny interested party, including Maria Avina, may now participate in the case by filing a response to the petition." The court thus found it unnecessary to decide whether to grant Maria leave to intervene.

II.

A.

On appeal, Marco contends the trial court prejudicially erred in vacating the Judgment because, in finding Marco and Southwick had committed a fraud upon the court, it (1) relied on a nonexistent statutory obligation to provide notice of section 306 proceedings to other interested parties, (2) determined Marco and Southwick had a duty to disclose to the

7

court that Maria was claiming an ownership interest in A & A, and (3) concluded Southwick should have filed a notice of related case apprising the trial court of the two pending proceedings. Marco claims Maria lacked standing to participate in the section 306 proceedings because she "held no interest in A & A" and "[section] 306 offers no pathway for a person to join in or oppose the application"; accordingly, "it was a completely immaterial fact, true or not, whether Maria was claiming an ownership interest."

We disagree. We conclude the trial court did not err in finding that Marco and Southwick were obligated to notify Maria of the section 306 proceedings and disclose Maria's interest in A & A to the trial court and that Marco and Southwick committed an extrinsic fraud upon the court when they failed to satisfy these duties. Accordingly, we determine the trial court did not abuse its discretion in vacating the Judgment.

B.

We review a trial court's decision on a motion to vacate or set aside a judgment on the basis that it was obtained through fraud for abuse of discretion. (*In re Marriage of Grissom* (1994) 30 Cal.App.4th 40, 46). "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479). Moreover, "we must view the evidence in the light most favorable to the trial court's determination." (*In re Marriage of Adkins* (1982) 137 Cal.App.3d 68, 75.)

8

C.

A trial court possesses the inherent power to vacate a judgment obtained by fraud. (*McGuinness v. Superior Court of San Francisco* (1925) 196 Cal. 222, 231-232 (*McGuinness*).) This inherent power extends to a judgment obtained through fraud on the court. (*Rice v. Rice* (1949) 93 Cal.App.2d 646, 651.)

While "extrinsic fraud" or "extrinsic mistake" are often cited as the grounds for this equitable power, "those terms are given a broad meaning and tend to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing." (*In re Marriage of Park* (1980) 27 Cal.3d 337, 342 (*Park*).) As a result, "[i]t does not seem to matter if the particular circumstances qualify as fraudulent or mistaken in the strict sense." (*Ibid.*) Rather, "[w]hat constitutes extrinsic fraud depends in large part on the circumstance of the individual case." (*Hickey v. Roby* (1969) 273 Cal.App.2d 752, 768 (*Hickey*).)

D.

We conclude the evidence before the trial court was sufficient to support its finding that Maria was a party claiming an interest in A & A such that she was entitled to receive notice of and participate in the section 306 proceedings.

Equitable relief based on extrinsic fraud is proper not only as to an adverse "party," "but also to a stranger whose interests have been adversely affected by the judgment." (*Hickey, supra,* 273 Cal.App.2d at p. 768.) Here, a probate proceeding to confirm Maria's ownership of A & A was pending and known to Marco and Southwick at the time they filed the Petition. The trial court record reflected that the probate court later declared Maria to be the sole person with an ownership interest in A & A. After the trial court

9

appointed Marco and Marcial as directors, they issued shares to themselves and sold a corporate asset, thus diluting Maria's ownership interest.  It therefore was reasonable for the trial court to conclude that Maria had an interest in the appointment of the board exercising control over her business that was adversely affected by the Judgment appointing directors without her knowledge and input.  While Marco contends that the ownership of a corporation that has not issued shares cannot be determined, the probate court's spousal property order is evidence to the contrary and supports the trial court's determination that Maria was an interested party.

Marco further contends there is a lack of causation between his and Southwick's failure to notify either Maria of the Petition proceedings or the trial court of Maria's interest and Maria's nonparticipation in the hearing, because section 306 neither requires notice to other parties nor provides a process for their participation.  But we disagree, persuaded by the reasoning of *California v. Broderson* (1967) 247 Cal.App.2d 797 (*Broderson*).  There, the appellants—heirs of the predeceased husband of the intestate decedent—petitioned the probate court to determine the decedent's heirship.  (*Id.* at p. 799.)  The probate court ordered the decedent's estate distributed to the appellants.  (*Id.* at p. 800.)  The State of California then challenged the probate court's judgment, which the trial court set aside because it found the appellants (1) knew the State had an interest in the decedent's estate but (2) failed to disclose that interest to the probate court and (3) intentionally failed to notify the State to deprive it of its interest.  (*Ibid.*)

Concluding that substantial evidence supported the trial court's order, the *Broderson* appellate court further determined that extrinsic fraud was present.  (*Broderson, supra,* 247 Cal.App.2d at pp. 803-804.)  The appellants claimed that they had given all statutorily required notice, and accordingly

10

the State could not challenge the probate court's judgment. (*Id*. at p. 804.) But the appellate court found that the appellants nonetheless "were under a duty to reveal to the probate court the extent of their knowledge, so that it might enter a proper decree. Failure to reveal that knowledge has prevented the State from asserting its claim, and precludes appellants' reliance upon the finality of the decree." (*Id*. at pp. 804-805.)

The same is true here. Regardless of whether section 306 specifically requires notice to other potentially interested parties, sufficient evidence supports the trial court's finding that Marco and Southwick had a duty to Maria and the court to disclose information they knew that Maria and the court did not. And while it is true that section 306 does not explicitly specify a procedure for other interested parties to participate in the proceedings, it is equally true that section 306 does not expressly bar interested parties from appearing and asserting their interests. The trial court did not err in finding Maria was entitled to know of and participate in the Petition proceedings.

Marco attempts to distinguish *Park*, on which the trial court relied in finding extrinsic fraud, based on Maria's lack of interest and inability to participate in the proceedings. Given our conclusions to the contrary, however, we are unpersuaded. And because the trial court found it unnecessary to decide Maria's motion to intervene, we do not address Marco's arguments concerning the impropriety of intervention in either the section 306 proceedings or after entry of judgment.

E.

The evidence before the trial court also was sufficient for it to conclude that Marco and Southwick purposefully failed to inform both the trial court of Maria's interest in A & A and Maria of the Petition to prevent Maria from knowing of and participating in the proceedings. We thus conclude the trial

11

court did not err in finding that Marco's and Southwick's failures to disclose constituted extrinsic fraud.

Marco and Southwick knew as early as 2019, during the probate proceedings, that Maria claimed an ownership interest in A & A. Nonetheless, neither Marco nor Southwick informed Maria of the Petition or the Judgment until January 2022. Marco also affirmed under penalty of perjury to the trial court, both in the Petition and during the subsequent hearing, that no one else claimed an interest in A & A. Southwick failed to correct these false statements, even when given a clear opportunity to do so during the section 306 hearing. Southwick later admitted that one reason he did not notify Maria of the Petition was to avoid her "unnecessary and improper interference" in the proceedings. Although Marco declared he never intended to defraud anyone, the trial court impliedly found otherwise. We will not disturb the trial court's credibility finding. (*Baugh v. Garl* (2006) 137 Cal.App.4th 737, 744 ["Where, as here, the trial court did not expressly make a finding of credibility, we must presume that the court found the facts that support the order."].)

A failure to disclose known, pertinent information can constitute extrinsic fraud on the court meriting the setting aside of a judgment. (See *Hickey*, *supra*, 273 Cal.App.2d at p. 768.) Such equitable relief is particularly justified in an ex parte proceeding, where the petitioning party is often the only party before the court and thus the sole source of the court's knowledge in reaching its decision. (See *McGuinness*, *supra*, 196 Cal. at p. 230.) Here, the trial court acknowledged that the Petition proceeding was the functional equivalent of an ex parte proceeding, and the upshot of Marco's and Southwick's failure to inform the trial court of Maria's interest was Maria's nonparticipation in the Petition proceeding. On this record, we cannot

conclude that the trial court abused its discretion in finding that Marco and Southwick perpetrated a fraud upon the court.

Indeed, Southwick, as an attorney, owes an affirmative duty of candor to the court. (*Roche v. Hyde* (2020) 51 Cal.App.5th 757, 817.) The duty of candor requires attorneys to use "those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law." (Bus. & Prof. Code, § 6068, subd. (d).) Under the Rules of Professional Conduct (Rules), this duty precludes offering evidence the lawyer knows to be false. (Rule 3.3(a)(3).) This duty extends to false evidence offered by the lawyer's client: if the client offered false material evidence and "the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal, unless disclosure is prohibited" by the Rules governing client confidences. (*Ibid.*) Here, disclosure would not have violated client confidences because the existence of the other two pending actions was a matter of public record. Thus, in both failing to correct Marco's false testimony and failing to affirmatively disclose that Maria was asserting an adverse ownership interest in A & A in two other pending actions, Southwick violated his duty of candor. (Bus. & Prof. Code, § 6068, subd. (d); Rule 3.3(a)(3).)

Southwick further breached his ethical duty as an officer of the court by failing to disclose the pending actions and Maria's claim of ownership of A & A. Rule 3.3(d) of the Rules provides:

> In an ex parte proceeding where notice to the opposing party in the proceeding is not required or given and the opposing party is not present, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse to the position of the client.

13

Here, the existence of the other two proceedings in which Maria was asserting an adverse ownership interest was material to the court's decision whether to grant the Petition, as Maria had an interest in opposing the appointment of Marco and Marcial as directors so that they could not issue stock to themselves and sell corporate assets without her knowledge or consent. Southwick impliedly admitted as much by declaring that, had Maria been notified, she would have "interfer[ed]" in the section 306 proceedings. As the section 306 proceedings were essentially the equivalent of an ex parte proceeding, Southwick accordingly also breached his ethical duty under Rule 3.3(d) of the Rules.

Ultimately, when trial judges vacate a judgment "rendered in ignorance of material facts which [t]he[y] believe[ ] a party had a duty to disclose" and which, if known, "would have caused [t]h[e]m to refrain from ordering the judgment, we will not question [t]h[eir] action." (*Gordon v. Gordon* (1956) 145 Cal.App.2d 231, 235.) Here, the trial court made an express finding that it "would not have entered the judgment, as requested by Marco Avina and Marcial Avina, if they had truthfully answered the Court's questions at the hearing, or if their attorney, Stanley Southwick, had disclosed that other litigation was pending in which Maria Avina was claiming an ownership interest in the corporation."[1] We conclude the trial court's determination that Marco and Southwick committed fraud on the court by intentionally failing to disclose Maria as an interested party was the result of a sound

---

[1]     While the parties do not address the trial court's mistaken statement in the Order that both Marco *and* Marcial testified untruthfully under oath, that error was harmless. In fact, Marco, the sole petitioner, was the only person who testified untruthfully; nonetheless, for the reasons provided *ante*, we conclude Marco's and Southwick's extrinsic fraud on the court was sufficient to justify the trial court's decision to set aside the entire Judgment obtained as a result.

14

exercise of judicial discretion; accordingly, the trial court did not err in vacating the Judgment.

## III.

We affirm the Order.  Marco shall bear Maria's costs on appeal.


CASTILLO, J.

WE CONCUR:


BUCHANAN, Acting P. J.


RUBIN, J.