Filed 10/28/24  City of Perris v. Henry CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| CITY OF PERRIS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RONALD LEE HENRY, JR.,<br><br>    Defendant and Appellant. | D084029<br><br><br><br>(Super. Ct. No. RIC1822624) |

APPEAL from an order of the Superior Court of Riverside County, Daniel A. Ottolia, Judge.  Reversed and remanded with directions.

Law Office of Zulu Ali & Associates, Zulu Ali; Law Office of M. Lance Kennix and M. Lance Kennix for Defendant and Appellant.

Aleshire & Wynder, Robert Khuu, Priscilla George and Michael Linden for Plaintiff and Respondent.

Ronald Lee Henry, Jr.,[1] appeals from an order denying his motion to vacate a $1.7 million judgment and discovery orders against him in an action

---

[1]     To avoid confusion, we refer to the individuals involved by their first names.  Because Ronald and his father share the same name, we refer to his father as Ronald Sr.

for nuisance and civil penalties brought by the City of Perris arising out of his uncle Bishop Morrow's operation of an unlicensed automotive repair business at a residential property. Ronald contends he should have been granted equitable relief from the judgment because he was not aware of the litigation or his uncle's violations until after the judgment was entered; his parents were the true equitable owners of the property even though he was on title; he did not retain or have any contact with the attorneys who purported to appear on his behalf in the matter; and those attorneys failed to respond to discovery or oppose the City's summary judgment motion, resulting in the $1.7 million judgment against him without a fair adversary hearing. In these unusual circumstances, we agree that Ronald is entitled to equitable relief based on the doctrine of extrinsic mistake. We therefore reverse the order denying Ronald's motion to vacate and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Proceedings Leading to Judgment*

In October 2018, the City initiated this action by filing a complaint for nuisance abatement, injunctive relief, and civil penalties against Ronald and Bishop. The City asserted various violations of the City's municipal code alleged to have been occurring on a property located on Nina Circle. The complaint alleged that Ronald was the owner of the Nina Circle property, and that Bishop was a tenant or subtenant.

According to the complaint, between 2012 and 2017, the City had received a large number of complaints from various neighboring residents about illegal parking and the operation of an unlicensed automotive repair business on the property.

The City had attempted to resolve concerns about activities on the property through numerous citations issued by code enforcement officers in

2

2017.  The violations continued.  Then, in August 2017, over a year before initiating the civil action underlying this appeal, the City filed a criminal complaint against Ronald and Bishop, but the violations still did not abate.

After code enforcement officers made further inspections in 2018 and found the same public nuisance violations occurring, the City filed this action against the defendants, seeking an order requiring compliance with the City's municipal code, a permanent injunction, and the payment of the City's costs of enforcement, including legal fees and costs.  The City also sought civil penalties of up to $2,500 per day for alleged illegal discharge of oil under City of Perris Municipal Code sections 14.22.070 and 14.22.140(7).[2]

In December 2018, the City requested to amend the complaint to correct the name of the defendant originally identified as "RONALD LEE HENRY, an individual" to "RONALD LEE HENRY, JR., an individual."  The court permitted the amendment.

A process server made several unsuccessful attempts to serve Ronald with the summons and complaint in person at the Nina Circle property.  On the third attempt in January 2019, the process server left the documents at the property with "Corey 'DOE' – Co-Occupant" (later identified as Cory Stuart), then completed substitute service by mailing the documents to

_____

[2]     City of Perris Municipal Code section 14.22.070 makes a person liable for any "discharge that would result in or contribute to a violation of NPDES Permit No. CAS 618033, Order No. R8-2002-0011."  The City's complaint alleged that the discharges here violated this order because they "ultimately seeped into the City's stormwater drainage system."  Section 14.22.140(7) provides that a person "may be held liable for a civil penalty not to exceed $2,500 for each day [that] such a violation exists."  Of all the allegations in the City's complaint, only the alleged discharges of oil carried this civil penalty.

3

Ronald at the Nina Circle address by first-class mail.[3]  Bishop was also served with the summons and complaint by substitute service at the Nina Circle property.

In January 2019, attorneys at Legis Law, identifying themselves as representing both Bishop and Ronald, filed an answer to the complaint on behalf of both defendants.  Once the answer was filed, the parties stipulated to set aside a default that had already been entered as to Bishop.  The trial court accepted the stipulation and relieved Bishop from default.  About a month after the original answer was filed, Legis Law filed a first amended answer on behalf of both defendants.

In May 2019, attorneys for the City served counsel for the defendants with the City's discovery requests, including requests for the production of documents, requests for special interrogatories, requests for admissions, and form interrogatories.  The defendants failed to respond.  On July 12, the City moved to compel discovery responses and have the requests for admissions be deemed admitted.  Defense counsel filed no opposition to these discovery motions.

At the trial setting conference on July 30, 2019, the City and the defendants were represented by counsel.  The court set trial to begin in December.

On August 29, the City filed a motion for summary judgment.  The City's supporting evidence showed the following: The City received at least 15 complaints between 2012 and 2017 from various residents in the neighborhood about illegal parking and operation of an illegal automotive repair business at the Nina Circle property.  In response, the City inspected

---

[3]  Ronald has never challenged the validity of service of the summons and complaint.

4

the property 24 times between 2012 and 2017. The inspections revealed "substantial evidence" of an illegal automative repair business at the property. Code compliance officers observed inoperable vehicles leaking oil onto the pavement immediately adjacent to the property. At many of these inspections, enforcement officers spoke with Morrow who admitted in May 2017 he was running an auto repair business at the property "because he needed to feed his family and nobody was going to hire a 75-year-old man." The City repeatedly notified Bishop that it was illegal to operate the automotive repair business on the property, ordered him to cease operations, and issued citations totaling $9,000 in fines. Although Bishop repeatedly assured the City he would stop running the illegal operation, the violations did not abate.

The City also submitted a copy of a recorded quitclaim deed conveying the Nina Circle property from Ronald's parents to him on October 7, 2009.

On September 25, 2019, less than a month after the City moved for summary judgment, the court granted the City's unopposed motions to compel and for deemed admissions. As to Ronald, the facts the court deemed to be admitted were that he owned the Nina Circle property, he rented it to Bishop, he allowed an automotive repair business to be operated on the property without a business license, and he allowed dismantled vehicles to be stored on the property in public view. The court also ordered the defendants and defense counsel to pay sanctions for their discovery violations.

Two days later, Legis Law filed and served a request to be relieved as defendants' counsel. In a supporting declaration, an attorney at Legis Law stated: "Attorneys have lost [contact] with Defendants making continued effective representation unreasonably difficult . . . . The Defendants have breach[ed] a material term of the agreement between the Defendants and

5

Legis Law relating to the representation, and Legis Law has given reasonable warning after the breach that Legis Law will withdraw[] unless Defendants fulfill the agreement." (Internal citations omitted.) The "Defendants" were identified as "Ronald Lee Henry, Jr. and Bishop Morrow." The attesting attorney stated he had "confirmed within the past 30 days that the address is current" by telephone, and that the clients had been served by mail at the Nina Circle address. The attorney did not identify whom he spoke to by telephone to confirm the address.

Legis Law remained as counsel of record for the defendants when the November 4, 2019 deadline for their opposition to the City's summary judgment motion passed. No opposition was filed and no continuance requested.

On November 18, 2019, the trial court granted the City's unopposed motion for summary judgment. Defense counsel from Legis Law was present at the summary judgment hearing. They did not request a continuance of the hearing. In its order granting the City's motion, the court found that the City was entitled to judgment on all claims, including its cause of action for illicit discharge of oil in violation of City of Perris Municipal Code section 14.22.070, but made no finding that there were unlawful discharges of oil every single day or continuously during the relevant time period.

A couple of weeks later, the court granted Legis Law's request to be relieved as counsel.

In early February 2020, the City submitted a proposed judgment for civil penalties against both defendants jointly in the amount of $1,667,500. The proposed judgment stated: "Pursuant to PMC [Perris Municipal Code] § 14.22.140(7) Defendants are liable for a civil penalty not to exceed $2,500 for each day a violation of PMC chapter 14.22 exists on the Property. From

6

June 12, 2017, the first day City discovered a violation of PMC section 14.22 pursuant to the Complaint, to April 10, 2019, the day the City no longer observed the violation on the Property, is 667 days. Therefore, Defendants are to pay civil penalties in the amount of $1,667,500 to [the] City, pursuant to PMC 14.22.140(7)." This sum was the maximum possible civil penalty of $2,500 per day for 667 days.

Without holding a hearing on the amount of the civil penalty, the court signed and entered the judgment as proposed by the City. The City then moved for attorney fees of $61,818.28, and in April 2020, the court granted that motion in full. On September 10, 2021, almost a year and a half after the last activity had taken place in the action, the trial court signed and entered an amended judgment to include the City's attorney fees. The final total amount of the amended judgment was $1,729,318.28. The amended judgment was recorded in the County of Riverside on June 17, 2022.

B. *Proceedings After Judgment*

The City filed a writ of execution on July 28, 2022. Five months later, the City filed an application for order for the sale of the Nina Circle property and set a hearing for February 24, 2023. The trial court issued an order to show cause on December 21, 2022, ordering the defendants to show cause why an order for sale of the property should not be made. The documents were served on the defendants by mail at the Nina Circle address.

Represented by new counsel, Ronald appeared and filed a "Response to OSC" on February 9, 2023. Ronald requested that the court postpone the sale of the property to permit him an opportunity to set aside the judgment. The trial court appears to have delayed the sale of the property.

At the end of March 2023, Ronald moved to vacate the judgment and prior discovery orders of the court on the ground of extrinsic fraud or

7

mistake. His motion cited Code of Civil Procedure[4] section 437, subdivision (d), but also asserted that under *Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 47–49, and other authorities governing a court's equitable power to set aside a judgment, the court had authority to grant relief at any point in time, regardless of the availability of relief under section 473. Ronald conceded that "extrinsic fraud or mistake was not perpetrated by the opposing party," but argued that he nevertheless had been "denied his right to proper notice of the court proceedings for reasons entirely extrinsic to his own knowledge and actions."

In supporting declarations, Ronald and his father explained that although Ronald was the legal owner of the Nina Circle property, his parents had transferred title to him only because his father was being deployed overseas and his parents wanted to get the property out of their names to free up credit to support Ronald's mother while he was away. The property was occupied by Ronald's aunt, Renee Henry, and her husband, Bishop, who were responsible for the upkeep and maintenance. Ronald and his parents allegedly did not tell anyone about the transfer of title because his parents intended to continue handling all financial matters concerning the house. Ronald's parents were still the actual owners of the property, and Ronald claimed he had nothing to do with the property other than having it in his name.

Cory Stuart also submitted a supporting declaration confirming that he was the person who received the legal papers for Ronald from the process server in January 2019. He lived at the property with Bishop and Renee.

---

4    All further undesignated statutory references are to the Code of Civil Procedure.

Cory gave the legal papers to Bishop. As far as he knew, nobody but Bishop knew anything about the legal papers.

According to Ronald and his father, they were not aware of the City's enforcement action until December 2022, when Renee told Ronald's father about it. Renee submitted a declaration explaining that Bishop had been suffering from dementia since 2012; he was not in a condition to understand what was happening when the City's lawsuit was filed in October 2018; his diagnosis was terminal; and he was on home hospice care with Renee caring for his needs. She attached medical records for Bishop supporting these assertions. Cory lived with Renee and Bishop in exchange for his help caring for Bishop and the property.

Renee explained that in December 2018, she received a letter from Legis Law addressed to Bishop about the City's lawsuit. She called Legis Law and hired the firm to defend her husband and brother. She was under the impression that her brother, Ronald Sr., was the person named. She did not tell her nephew Ronald about the case because she did not know he had any connection to the house. Renee believed the matter had been taken care of until she received the City's notice of levy in December 2022. She then called her brother and told him about it. He in turn informed Ronald.

According to Ronald, he did not sign any retainer agreement with Legis Law and never met or had any contact with the firm or any other attorney about the City's case. He further asserted that had he known about the City's complaint about the condition of the house, he could have done something about it years earlier.

In opposition, the City did not contest the truth or credibility of the declarations submitted by Ronald and did not submit any contrary evidence. The City nevertheless argued that Ronald had "not met his burden of

9

producing competent objective evidence of extrinsic fraud, mistake, or excusable neglect to entitle him to equitable relief . . . ." Specifically, the City asserted that Ronald's evidence failed to establish his entitlement to equitable relief based on extrinsic fraud or mistake because he had "fail[ed] to present any evidence . . . demonstrating he has a meritorious case"; his "excuse that he was 'unaware' of [his] attorney" was "not satisfactory" because he "had legal representation in the civil case which provided him the opportunity to present a claim or defense to the court, and participate in the proceedings"; his papers were "void of any facts or evidence showing that he or his attorney were in some way fraudulently prevented from filing an opposition" to the City's summary judgment motion; he had "not demonstrated diligence in seeking relief" and "was guilty of inexcusable neglect"; and he had "an available alternative method of seeking relief from the judgement [*sic*] by a legal malpractice claim against Legis Law if facts exist to support such a claim."

The trial court denied Ronald's motion to vacate the judgment. After finding that Ronald was not entitled to statutory relief under section 473, the court rejected his claim for equitable relief as follows: "Further, Defendant does not set forth any grounds to set aside the judgment based on extrinsic fraud or mistake. Defendant fails to show that he has a meritorious defense, fails to present any evidence of extrinsic fraud or mistake, fails to show excusable neglect of a party, and fails to demonstrate that he was fraudulently prevented from defending the action. There is no basis for equitable relief from the judgment. Further, Legis Law has appeared in this action on behalf of Defendant. While Defendant contends that he never signed a retainer agreement, he does not dispute that Legis Law represented him in this case. If Legis Law appeared on his behalf without his consent,

10

Defendant is not prevented from pursuing his remedies by way of an action against Legis Law."

DISCUSSION

Ronald contends that the trial court erred by denying equitable relief from the judgment. We review an order denying equitable relief for an abuse of discretion. (*Hudston v. Foster* (2021) 68 Cal.App.5th 640, 661.) In doing so, we determine whether the trial court's factual findings are supported by substantial evidence and independently review its statutory interpretations and legal conclusions. (*Ibid.*) An abuse of discretion is shown if the court's findings are not supported by substantial evidence. (*Vargas v. Gallizzi* (2023) 96 Cal.App.5th 362, 371.) An abuse of discretion also occurs when, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1415.)

Even when statutory relief is unavailable, a trial court has inherent power to vacate a judgment on equitable grounds. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 (*Rappleyea*).) "One ground for equitable relief is extrinsic mistake—a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits." (*Ibid.*) "If an unsuccessful party to an action has been kept in ignorance thereof [citations] or has been prevented from fully participating therein [citation], there has been no true adversary proceeding, and the judgment is open to attack at any time." (*Westphal v. Westphal* (1942) 20 Cal.2d 393, 397.) To qualify for equitable relief from a judgment based on extrinsic mistake, the moving party must: (1) demonstrate that it has a meritorious case; (2) articulate a satisfactory excuse for not presenting a defense to the original

11

action; and (3) exercise diligence in seeking to set aside the judgment once discovered. (*Rappleyea*, at p. 982.)

We consider each of these requirements in turn. First, to demonstrate a meritorious case, "only a minimal showing is necessary. [Citation.] The moving party does not have to guarantee success, or 'demonstrate with certainty that a different result would obtain . . . . Rather, [it] must show facts indicating a sufficiently meritorious claim to entitle [it] to a fair adversary hearing.' " (*Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, 1246 (*Mechling*), quoting *In re Marriage of Park* (1980) 27 Cal.3d 337, 346 (*Park*).) In making this determination, a court does not judge the truth or credibility of the facts presented. "[A] hearing on a motion to relieve a defendant from default is not the place or time to ascertain whether defendant really has a defense." (*First Small Business Inv. Co. v. Sistim, Inc.* (1970) 12 Cal.App.3d 645, 650.) "The court's inquiry is limited to whether the affidavit or verified pleading contains a statement of facts sufficient to constitute a meritorious case, and the truth concerning the meritorious defense is not at issue." (*Ludka v. Memory Magnetics International* (1972) 25 Cal.App.3d 316, 323–324 (*Ludka*).)

On this record, Ronald made the "minimal showing" necessary to demonstrate a potentially meritorious defense. (*Mechling, supra,* 29 Cal.App.5th at p. 1246.) He submitted sworn declarations showing that he went on title to the Perris property solely to help his parents qualify for credit to support his mother while his father went on deployment. Otherwise, he had nothing to do with the property and lived in Nevada. His parents were still the actual owners and continued to handle all financial matters related to the property. The underlying violations were committed by Ronald's uncle who lived at the house with his wife and was operating an unlicensed vehicle

12

repair business on the premises.[5] In his declaration, Ronald asserted: "If I had known about The City's complaint about the condition of the house, I could have done something about it years ago." He also stated: "The judgment is ridiculously high and way out of proportion to any damage to the neighbors due to a messy yard." His points and authorities made the same contentions and argued that the judgment was "wildly in excess of the harm done" and "unconscionably large."

Taking Ronald's evidence as true (*Ludka, supra*, 25 Cal.App.3d at pp. 323–324), his claim of lack of notice of his uncle's violations was sufficient to establish a potentially meritorious defense to the civil penalties. The relevant provision of the City of Perris Municipal Code states that a person "*may* be liable for a civil penalty *not to exceed* $2,500.00 for each day that such a violation exists." (City of Perris Mun. Code, § 14.22.140(7), italics added.) Thus, the trial court had broad discretion to impose penalties anywhere from zero to $2,500 per day. Without explanation, however, the trial court signed the City's proposed judgment imposing the maximum possible penalty of nearly $1.7 million jointly against Ronald and his uncle (667 days of violations times $2,500 per day). The court did so without holding a hearing on the appropriate amount of the penalties. Based on Ronald's showing that he held legal title to the property in name only, his parents were still the equitable owners, and he had no knowledge of the violations committed by his uncle, he could have argued that no penalties should be imposed against him.

Alternatively, even assuming Ronald bore some responsibility as the record owner of the property, he still had a potentially meritorious claim that

[5]    In the City's multiple unannounced inspections over five years, Ronald was never present at the property—the code compliance officer only dealt with his uncle.

13

it was unjust to impose the *maximum* $1.7 million in penalties against him for violations he did not personally commit and knew nothing about. A meritorious defense need not be capable of defeating liability entirely; it may contest only the amount of the judgment. (See, e.g., *McCreadie v. Arques* (1967) 248 Cal.App.2d 39, 45 [meritorious defense shown where it was " 'doubtful that the defendant would be able to escape liability for the claimed damage, but a serious question exist[ed] as to the' " amount of damages]; see also *Park, supra*, 27 Cal.3d at p. 346 [meritorious claim shown where wife demonstrated that division of community property "might well" have been more favorable to her if she had been properly represented]; *Key Bank v. Tablecloth Textile Co.* (1st Cir. 1996) 74 F.3d 349, 354–355 [meritorious defense "at least as to the amount of damages" required that default judgment be set aside]; *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.* (4th Cir. 1988) 843 F.2d 808, 812 [evidence contesting the "amount, rather than the propriety" of plaintiff's claim was "a sufficient proffer of a meritorious defense" to set aside judgment].)

Ronald argued that the judgment was excessive in his motion to vacate, and his supporting evidence, if found to be credible, could arguably persuade a factfinder that something far less than the maximum $1.7 million penalty was warranted. Although we acknowledge that the issue was poorly developed below and understand the trial court's ruling given Ronald's superficial briefing, we nevertheless conclude that Ronald satisfied the "minimal showing" necessary for a potentially meritorious defense.[6] (*Mechling, supra*, 29 Cal.App.5th at p. 1246.)

---

[6] We do not consider Ronald's claim that the civil penalties were *unconstitutionally* excessive because it was not raised in the trial court and has therefore been forfeited. Ronald has also forfeited many of the other legal arguments he asserts for the first time in his supplemental letter brief,

14

Second, Ronald provided a satisfactory excuse for not presenting a defense to the original action. (*Rappleyea, supra*, 8 Cal.4th at p. 982.) His excuse was that he did not know about the City's enforcement action until long after judgment was entered; he never received the papers; he did not retain and never communicated with the Legis Law attorneys who purported to represent him; and those attorneys completely abandoned the defense *before* they were relieved by failing to respond to discovery and failing to oppose the City's summary judgment motion, resulting in a $1.7 million judgment against him without any adversarial hearing.

As a matter of law, this showing was sufficient to demonstrate that "circumstances extrinsic to the litigation . . . unfairly cost [Ronald] a hearing on the merits." (*Rappleyea, supra*, 8 Cal.4th at p. 981.) The circumstances here are comparable to those in *Park, supra*, 27 Cal.3d 337, where the Supreme Court reversed the denial of a motion to vacate a judgment of marital dissolution for abuse of discretion. (*Id*. at p. 347.) In *Park*, the wife was deported to Korea during the dissolution proceedings, and she was represented at the final hearing by a new attorney who "had never met" her and "did nothing on her behalf." (*Id*. at p. 341.) In finding that she should have been granted equitable relief based on extrinsic fraud or mistake, the

including that the civil penalties are disproportionate to other fines within the municipal code; the $2,500 daily penalty only applies to commercial properties; the City's delay contributed to the excessiveness; and the penalties bore no relationship to Ronald's ability to pay. We nevertheless conclude that Ronald did adequately preserve his nonconstitutional claim that the civil penalties were excessive by asserting that he was not the true owner of the property, he had no notice of the violations, and the $1.7 million judgment was "ridiculously high," "wildly in excess of the harm done," and "unconscionably large." (Cf. *Summers v. Superior Court* (2018) 24 Cal.App.5th 138, 143 [single sentence in trial court brief "was sufficient to preserve the argument"].)

15

Supreme Court concluded she had been denied a fair adversary hearing because she "never consented to the new attorney's representation," she "wasn't even notified of his actions," and the attorney's representation at the hearing was inadequate. (*Id*. at pp. 343–345.) Similarly, Ronald was denied a fair adversary hearing because, as he claimed, he never consented to representation by the Legis Law attorneys, he never communicated with them, he was not notified of their actions, and their representation was inadequate in that they failed to respond to discovery or oppose the City's discovery or summary judgment motions.

Third, Ronald demonstrated diligence in seeking to set aside the judgment once discovered. (*Rappleyea, supra*, 8 Cal.4th at p. 982.) The trial court did not rule otherwise as to this factor. After learning of the judgment for the first time in December 2022, Ronald retained counsel who within a few months prepared and filed (1) a request to postpone the sale of the property and (2) a motion to vacate the judgment. In evaluating this factor, moreover, the "court must weigh the reasonableness of the conduct of the moving party in light of the extent of the prejudice to the responding party." (*Mechling, supra*, 29 Cal.App.5th at pp. 1248–1249.) Notably, the judgment here is not a compensatory damages award in favor of an injured victim who would have to start all over again in the trial court. It is an award of civil penalties in favor of a municipality that sought and received the maximum penalty of $1.7 million—against an individual who was undefended at the time—without any showing as to actual harm. Any prejudice to the City in vacating the judgment so that Ronald can defend himself in a fair adversary proceeding pales in comparison to the equities in his favor. (See also *Park, supra*, 27 Cal.3d at p. 345, fn. 7 [even though relitigation of issues "will be

16

time consuming and cause additional expense, such prejudice does not arise out of the delay" and therefore "cannot be considered"].)

In sum, Ronald satisfied all three requirements for equitable relief based on extrinsic mistake. On this unique record, the trial court's contrary findings are not supported by substantial evidence. Although equitable relief is available only in exceptional cases, we conclude Ronald demonstrated that the circumstances here are exceptional and he is at least entitled to a "fair adversary hearing" to contest the propriety and amount of the civil penalties. (*Park, supra*, 27 Cal.3d at p. 346.) We therefore conclude that the trial court's ruling exceeded the bounds of its discretion under the doctrine of extrinsic mistake.

## DISPOSITION

The order denying Ronald's motion to vacate the judgment is reversed. The matter is remanded to the trial court with directions to grant the motion, vacate the judgment and amended judgment as to Ronald only, and conduct further proceedings consistent with this opinion, including but not necessarily limited to determining the propriety and amount of any civil penalties to be imposed against Ronald. In the interest of justice, each party shall bear their own costs on appeal. (Cal. Rules of Court, Rule 8.278(a)(5).)


BUCHANAN, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DO, J.

18